## Russ's Estate

*John G. Whitmore, Charles J. Margiotti, John E. Evans* and *Alphonse J. Straub,* for petitioner.

*Mullins & Woods, John H. Cartwright* and *Thomas G. Gregory,* for respondents.

BAIRD, P. J., May 2, 1932.—Dr. Eben J. Russ, late of St. Marys, Elk County, Pa., died November 13, 1921, leaving to survive him a widow, Clare H. Russ, his second wife, and one son, born to him by his first wife, after having first made and executed his last will and testament, bearing date March 22, 1921, duly probated and registered in the office of the Register of Wills of Elk County. His wife, Clare H. Russ, was named in said will as Clara H. Russ, and his son, Eben George Russ, was named Eben Russ.

The following are the dispositive parts of his will:

"1. After all just debts against me or my estate, if any such remain after my decease, are paid and adjusted, I give, devise and bequeath all my property of every kind, except as hereinafter otherwise disposed of, whether real estate or personalty, wherever the same may be situate, unto my wife, Clara H. Russ, to be hers without any conditions or subject to any charges, other than hereinafter set forth.

"2. At the expiration of six months from the date of this will my executors hereinafter named shall transfer from the estate to my son, Eben Russ, the following stocks from my holdings in the said companies: . . .

"3. I give, devise and bequeath to my son, Eben Russ, without any condition or restriction whatever, and excepting the same from out of all the other provisions of this will, my real estate in Benzinger Township, Elk County, Pennsylvania, purchased by me in November, 1912, by deed from St. Marys Coal Company and all leases, royalties and incomes of every kind pertaining to the said property. All the holdings are to go to him, his heirs and assigns forever without condition of any kind.

"4. In like manner I give, devise and bequeath to my wife, Clara H. Russ, the residence property we now occupy on Center Street, in the Borough of St. Marys, with all the improvements and buildings thereon; and all the household effects, library, furniture, paintings and everything else in or connected with the house; and all the motor cars, equipment, etc. which I own, as well as all garage implements, and everything connected with the house and garage.

"5. In like manner I give, devise, and bequeath to my wife, Clara H. Russ, the house I own on the south side of Center Street, in the Borough of St. Marys, the lot and all property connected therewith. This is the house now occupied by the Taylorson and Phelan families. And in like manner I give, devise and bequeath to her what I commonly have described as the Garner lot. This is a lot on the west side of St. Marys Street, in the Borough of St. Marys between the Hall, Kaul & Hyde Company property and the property of Hauber & Dippold.

"6. In like manner I give, devise and bequeath unto my son, Eben Russ, the half interest I have in a lot at Sunbury, Pennsylvania; to be the property of the said Eben Russ, his heirs and assigns forever.

"7. The devises and bequests hitherto made to my wife, Clara H. Russ, are to be without condition of any kind to her, and she may use the same, or any part thereof as she sees fit, but at the time of her death such portion as remains undisposed of I desire to pass to my son, Eben Russ, absolutely, the same as the other devises and bequests I have made to him herein."

An inventory and appraisement of his personal estate was made and filed, showing a total personal estate of $639,095.21, composed of cash in bank of $13,042.83; war savings stamps, $274.80; bonds, $153,009; accrued coupon interest on bonds, $2488.36; notes, $22,145.17; accounts due, $388.50; stocks, $433,998; judgment, $850; household effects, $7779.50; personal property on farm, $3041.50; and personal property in garage, $2077.25. The appraisement should be corrected: (1) error in adding value of bonds, so that this item should be $135,909.50; (2) adding value of $5000 of Kingdom of Belgium bonds, eight per cent., of 1941, value $4995; making a total appraisement of $626,990.71. Of this amount there was turned over to Eben Russ, as directed in the will, stocks to the value of $177,383. The balance of this estate, except cash in bank to the amount of $4856.99 and personal property on farm and in garage, was taken charge of by Clare H. Russ.

Mrs. Clare H. Russ died on or about January 3, 1930, after having made and executed her last will and testament, bearing date of October 2, 1928, and duly probated and registered in the office of the Register of Wills of Elk County. She also executed, by signing and sealing in the presence of witnesses, a paper bearing date of February 13, 1928, referred to in paragraph three of her will, and which itself refers to the will, but was not probated as part of her will, probably because she directed that "it is not to form any part of my will as my will is entered of record." In this writing she undertakes to dispose of all of her own property, as well as most of the property coming into her hands under the will of her husband, Eben J. Russ, and remaining undisposed of by her, and including the increase and accumulations of the same.

An inventory and appraisement was made in her estate of a total amount of $1,117,675.91, made up as follows: cash in bank, $195,953.98; household effects, $3088.35; jewelry, $13,528.50; stocks, $855,270.45; furs and personal belongings, $402.25; bonds and interest, $48,932.38; notes, $500. The substantial increase over the appraisement of the estate of Eben J. Russ is due in part to increased value of the stocks belonging to him at his death.

On August 21, 1930, Eben George Russ presented his petition to the Orphans' Court of Elk County, praying for a citation upon the executors of Clare H. Russ, deceased, and also upon all those persons mentioned in her will and letter accompanying the will as being beneficiaries thereunder, to show cause why the executors should not turn over to said Eben George Russ certain personal property as listed therein and added by subsequent amendments, on the ground that such property was that which was received by the said Clare H. Russ under the will of her husband, Dr. Eben J. Russ, together with the accretions and accumulations thereof, and that under the said will of her husband she had the possession of such property during her lifetime, with the right to consume the same or any part thereof, but that what remained unused and undisposed of was given to Eben George Russ, the petitioner. Said citation was duly served, and some of the parties receiving minor bequests waived and relinquished any claim or title to said property, but answers were filed by the majority admitting that some of the articles named were received by Clare H. Russ under the will of her husband, but denying that others were so received or acquired, and averring, further, that the petitioner, Eben George Russ, acquired under his father's will only a claim for the value of such portion of said property as remained undisposed of at the time of her death, as determined by the appraisal thereof at the time of the death of Dr. Eben J. Russ, and denying the right of the petitioner to any of the property in kind. Later, an amendment was filed, in which the respondents set up and averred that Clare H. Russ took an absolute estate in the property coming to her under the will of her husband, and denying that petitioner had any claim either to the property or its value, so that the controversy presents the following issues:

1. The construction of the will of Eben J. Russ. The petitioner claims that the proper construction of the will gives to Mrs. Clare H. Russ the possession of the property during her life, with the right to consume so much of the income and principal as may be necessary for her support, comfort, convenience, etc., but that what remains, including income, accretions and accumulations, in whatever form they may have been put by her, were given to and belong to the petitioner, the son of Dr. Eben J. Russ. If this position is sustained, then the question of the identification of the property arises, but not otherwise.

2. The primary contention of the respondents is now that Mrs. Clare H. Russ took an absolute estate in all of the personal property in controversy. If this contention should not prevail, then the secondary position taken by them is that Clare H. Russ took the property absolutely and became a debtor to petitioner for the value of such portion of the property as remained undisposed of at the time of her death, as determined by the appraised value thereof at the time of the death of Dr. Russ, the testator, that is, that the entire income and also so much of the corpus of the estate as she saw fit to sell or otherwise disposed of belongs to her, or rather to her estate, and that the son gets only the value of so much of the original property as remained undisposed of at her death, that value being determined by the appraisement of the testator's estate.

In our opinion, the only portion of the will of Dr. Russ that admits of construction is the final clause in the seventh paragraph thereof, to wit, "but at the time of her death such portion as remains undisposed of I desire to pass to my son, Eben Russ, absolutely, the same as the other devises and bequests I have made to him," and the question is, are these words precatory or mandatory? We think they are mandatory, and to this extent we sustain the contention of the petitioner. In similar cases the word "wish" or "desire" has been held mandatory as expressing the will or intention of the testator to dispose of his estate. "Where the words 'wish' and 'desire' are used in expressing a desire for an act to be done by some person named by the testator, they are generally

precatory merely, but no such presumption necessarily arises when the words are used to express the intention and will of the testator. In such cases they are held mandatory:" Dickinson's Estate, 209 Pa. 59, 61, and cases there cited. Such words as "desire" or "wish," generally precatory when used in connection with an act to be done by some person named by testator, are mandatory when expressive of the intent of testator to be carried out without the intervention of another's will: Croft v. Chelten Trust Co. et al., 272 Pa. 514.

In no other respect does the will of Dr. Russ require or allow of construction. "It is a rule of common sense as well as law not to attempt to construe that which needs no construction:" Reck's Appeal, 78 Pa. 432, 435; Hauer's Estate, 16 Pa. Superior Ct. 257, 260. The language of Dr. Russ is plain and his meaning free from doubt. He meant what he said when by the first paragraph of his will he gave, devised and bequeathed all of his property of every kind, except as thereinafter otherwise disposed of, to his wife, Clara (Clare) H. Russ, to be hers without any conditions or subject to any charges, other than as thereinafter set forth, and when as set forth in the seventh paragraph of his will he repeated that the devises and bequests made to her were to be without condition of any kind to her, and added that she might use the same, or any part thereof, as she saw fit, with this condition only, that at the time of her death he desired that such portion as remained undisposed of should pass to his son. No mention is made of the income, profits, accumulations, etc. What he gave to her was every item of personal property of which he died possessed, except the items specifically bequeathed to his son, and except such portions of the items bequeathed to her as remained "undisposed of" at her death. The items of personal property bequeathed to her are not specifically mentioned by him, but they are readily ascertainable by excluding from the inventory and appraisement of his estate the items otherwise disposed of.

What the petitioner now asks the court to do is to charge the estate of Mrs. Russ not only with all that portion of the principal, income, profits, etc., which came to her and which were not used by her for her support, comfort, convenience, etc. (notwithstanding the fact that the bequest to her was to be subject to no charges, and that she was in no wise limited either in the extent to which or the purpose for which she might use the same), and to compel the delivery thereof to him in whatever form such principal, profits, etc., existed at the time of her death, but also to charge her with all gifts made by her and compel the delivery to him of the proceeds of all sales made by her, or the stocks, bonds, etc., purchased by her with the proceeds of such sales; all this in addition to the undisposed of portion of the original bequest in its original form. Such a claim, in our judgment, is contrary to the plainly expressed intent of the testator.

In Martin's Estate, 280 Pa. 573, the will reads as follows:

"I devise and bequeath my estate and property of whatsoever kind to my wife Mary M. Martin in the manner following, that is to say I give to the said Mary M. Martin my wife the house and lot where we now reside together with all the furniture and fixtures therein contained, absolutely without conditions and after paying all my just debts and giving to our adopted daughter Ella B. Martin one thousand dollars, in such a manner as she the said Mary M. Martin may deem the most fitting for her use and benefit. The balance of my estate I desire that my wife shall have the use and benefit of so long as she remains my widow. I also appoint her my sole executor without giving bail. And without appraisal and should anything remain over the above it is my wish that the residue shall be divided among my nearest kin share and share alike."

A controversy arose between the executrix of the widow's estate and the administrator d. b. n. c. t. a. of the estate of the testator over the interest on money that D. M. Martin (the testator) had deposited in two banks at the time of his death, and interest on funds that Mary M. Martin, as executrix of the estate of D. M. Martin, had collected and deposited in the same banks to her credit as executrix of said estate, and the orphans' court awarded the fund to the executrix of the widow's estate. The Supreme Court adopted the following excerpts from the opinion of the orphan's court (page 575) :

"The real contest in this case is over the interest on money that D. M. Martin had deposited, in two banks, at the time of his death, and interest on funds that Mary M. Martin, as executrix of the estate of D. M. Martin, had collected and deposited in the same banks to her credit as executrix of said estate. . . . We hold that, under the second clause or paragraph of [his] will, testator made an absolute gift to his wife of the use and benefit of his estate so long as she remained his widow . . . ; [and she] remained his widow until her death. It has been repeatedly held . . . that an absolute estate will not be cut down by subsequent provisions of doubtful import; and when testator provided that his wife should have the use and benefit of the balance of his estate, if the property devised was real estate she naturally would take the occupation or cultivation [thereof] or rents [to] be obtained [therefrom;] and for the money, or its equivalent, as Webster says, 'the use generally speaking consists of the interest which the money would earn.' . . . The true intention of D. M. Martin was to provide for his wife . . . ; she was the first . . . object of his bounty. . . . Under this will Mary M. Martin could have used every dollar of the moneys left [by her husband] in the two banks, as well as other personal property, but instead of that she left the [money] . . . in the banks . . . and then, as executrix, she deposited other funds belonging to the corpus of her husband's estate, as well as the interest on such funds; now, under her last will and testament, her beneficiaries are simply claiming the interest that accumulated and was saved by Mary M. Martin." And the Supreme Court adds: "This claim was properly allowed."

If we eliminate from the first and seventh paragraphs of the will of Dr. Russ the words and phrases which are supposed to strengthen, and which certainly do not weaken, the secondary contention of the respondents, such as, "to be hers without any conditions or subject to any charges, except as hereinafter set forth," and "without condition of any kind to her," we have a situation corresponding as nearly as may be, without the use of identical words, to Martin's Estate. Omitting those words and phrases, a combination of the first and seventh paragraphs of the will of Dr. Russ would read as follows: "After all just debts against me or my estate, if any remain after my decease, are paid and adjusted, I give, devise and bequeath all my property of every kind, except as hereinafter otherwise disposed of, whether real estate or personalty, wherever the same may be situate, unto my wife, Clara H. Russ, and she may use the same or any part thereof as she sees fit, but at the time of her death such portion as remains undisposed of I desire to pass to my son, Eben Russ, absolutely, the same as the other devises and bequests I have made to him herein," and under such a bequest the income therefrom would belong to Mrs. Russ absolutely, in accordance with the ruling in Martin's Estate.

The conclusion to which we have come is that Mrs. Russ took an absolute estate in all that portion of the personal property bequeathed to her by her husband which was disposed of by her during her lifetime, and an estate for life in that part of the bequest which remained undisposed of at her death. This conclusion is not at variance with the rule drawn by the petitioner himself from the cases and other authorities cited by him in support of his contention that

the estate taken by Mrs. Russ was an estate for life with limited powers of consumption. We are, therefore, saved the necessity of making any reference to such cases and authorities. In his brief, page twenty-six, the petitioner says:

"Briefly stated, the rule is that an absolute gift of the income generally passes to the first taker all of the income up to the date of his or her death, but when the gift is for a particular purpose, as for support and maintenance, what remains unused for this purpose, whether principal or income, belongs to the remainderman."

In this case the gift was not restricted to any purpose whatsoever.

Later in this opinion we shall consider what part of her life estate remained undisposed of at her death, and now consider the respective rights thereto of the remainderman under the will of his father and the executors of the estate of Mrs. Russ. We find that their rights are determined by a line of cases which includes Reiff's Appeal, 124 Pa. 145, Letterle's Estate, 248 Pa. 95, Weir's Estate, 251 Pa. 499, and Kirkpatrick's Estate, 284 Pa. 583, all of which hold, under circumstances similar to those existing in this case, that the remainderman is entitled to receive, and that the estate of the life tenant is required to pay, only the appraised value of what the life tenant received from his or her testator.

In Letterle's Estate, supra, the Supreme Court said (page 97):

"The testator did not direct that one-half of his residuary estate should be held in trust for the use and benefit of his widow for life, the principal to be paid over to his heirs upon her death, but gave to her 'the free use, possession, enjoyment, benefit and advantage' of the same for and during the term of her natural life. By complying with the Act of 1871 [repealed by the Fiduciaries Act of 1917, but substantially reinacted therein by the 23rd section thereof] she became entitled to take, and did take, into her possession the one-half of the estate of her husband, but not as trustee for herself and her husband's heirs. The property became hers 'for her free use possession enjoyment benefit and advantage,' with an obligation resting upon her to secure the unimpaired value of it to the remaindermen upon her death. In Hubley's Est., 16 Philadelphia, 327, the court below, in speaking of the Act of 1871 and of the effect of the giving of a bond under it, said: 'The power of the life-tenant to use the property at his own discretion is there practically unlimited, and the rights of the reversioner are fixed by the bond. The former takes the risk as well as the advantages of speculation; the latter, while he can take no more is sure of receiving no less than the original value of the principal.' This we approved on an appeal to January Term, 1884, No. 355. If a life-tenant must bear the loss resulting from a depreciation in the value of a fund awarded to him under the Act of 1871, which can be done only at his instance, why should he not be entitled to the gain, if any? He risks all; the remaindermen nothing, for the bond, with approved surety, takes the place, as to them, of the fund ultimately to go to them."

In Kirkpatrick's Estate, supra, it was held that where a testator left his personal estate to his wife "to manage and invest the same" as she deems proper, and relieves her from entering security under the Act of May 17, 1871, P. L. 269 (repealed and reenacted as aforesaid), and the widow takes over the estate without entering security, she does not take as trustee, but becomes simply a debtor to the remaindermen for the appraised value.

Clare H. Russ and Eben Russ were the executors of the estate of Dr. Russ, and apparently by common consent she was permitted to take and keep possession of all of the personal property not specifically bequeathed to him, except as above noted, without being required to give security. In the case of the

stocks, or many of them, they joined as executors in transferring to her the shares not transferred to him in pursuance of the directions contained in the second paragraph of the will. By analogy to Kirkpatrick's Estate, we take it that the legal relations between the doctor's wife and son, life tenant and remainderman, respectively, were the same as if a bond had been given under the Fiduciaries Act.

We are asked by the petitioner to say that the words "undisposed of," as employed in the seventh paragraph of the will, are synonymous with "unconsumed." Except as an aid to construction, for which there is no occasion, we can see no reason for the substitution. The words "undisposed of" are in common use and should be given their common and popular meaning.

"As may be seen by consulting any dictionary, 'disposition of' property is the alienation of it, the bestowal of it. To dispose of a thing is to direct its subsequent ownership. . . . In short, wherever the words 'disposition,' 'disposed of,' or 'undisposed of' are employed in this will, they convey, and were meant to convey, the active idea of parting with or not parting with something:" Brown's Estate, 289 Pa. 101, 117, 119.

"Dispose . . . . has been variously defined as meaning . . . . to alienate; to alienate or direct the ownership of property; to barter; to convey; to exchange; to exchange for other property; to bestow; to give; to give away or transfer by authority; to part with; to part with to another; to part with the right to or ownership of property, in other words, a change of property; to put into the hands of another; to put into another's power and control; to relinquish; to sell a thing; to sell at auction; to sell for cash or on time; to transfer; to transfer to any person; to transfer effectually . . . :" 18 C. J. 1279, 1280, 1281.

"Undisposed of," as used in a will giving to the testator's wife certain property for life, and providing that, if any such property should remain undisposed of by her at her death, it should go to certain persons, should be construed to mean undisposed of by any sale or otherwise that she as owner in her lifetime might see fit to make: Perry et al. v. Cross et al., 132 Mass. 454, 456.

In Lininger's Appeal, 110 Pa. 398, where testator conferred upon his wife power to take into possession, hold or convert into cash his entire personal estate (power conceded to Mrs. Russ) and "to use for her support and maintenance as much thereof as she may see proper *for that or any other purpose*" (a privilege no broader or less restricted than that conferred upon Mrs. Russ), it was held that the widow was the sole judge of her own necessities and desires, and that an absolute power of disposition of testator's personal estate was vested in her. In that case exceptions were filed to the final account of the remaining executor of the widow's estate because the accountant did not charge himself, inter alia, with a judgment for $6000 and interest, which exceptants claimed belonged to her husband's estate. At the hearing before the auditor it appeared that the judgment was part of the estate of the husband at the time of his death; that the widow satisfied the judgment, and on the same day a judgment was confessed by the defendant therein for a similar amount in favor of her son. The auditor found as a fact that this was done with the intention of making a gift of this sum to the son, and decided that the widow had no right, under the will, to make a gift of this judgment which decedent held at the time of his death. The auditor's report was confirmed by the orphans' court, and on appeal the Supreme Court said (pages 400, 401): "We cannot regard it otherwise than as remarkable that, in the face of the very clear and explicit terms of the will of Samuel Lininger, and the previous intimation of this court, as found in Lininger's App., 5 Out. [101 Pa.] 161, these appel-

lants should have been surcharged with the McElhare judgment. In that case the attempt was made, in contravention of the expressed will of the testator, to compel the executors to take out letters, but we refused to sanction the effort thus made. Mr. Justice Mercur, in delivering the opinion of this court, remarked inter alia: 'An inventory or appraisement of the property, all of which may be consumed by the widow at her pleasure, would be useless if made.' We need hardly add, that this decision positively settled the construction of the will in favor of the widow's absolute right of disposition so far as the personalty was concerned; otherwise the executors must have had duties to perform during her life, in the way of controlling her use of the property, which would have required the taking out of letters. If then, as the learned justice says, she could consume the personal estate 'at her pleasure,' without restraint of any kind, I cannot understand how it could have been put more completely in her power, neither do I understand why, having such absolute control over it, she could not give it away if she chose so to do.''

Every word quoted above from Lininger's Appeal, concerning the power of the widow in that case, may be applied with equal force and propriety to the power conferred upon Mrs. Russ. She was in no way restricted to any specific use, such as support and maintenance, or to any other use whatever.

In Tibben's Estate, 8 Dist. R. 234, 236, Judge Ashman, of the Orphans' Court of Philadelphia, said: "The gift over of the testator was 'of anything remaining of my estate,' and how could anything of that estate remain where everything had been sold. If the widow had appropriated the proceeds of sale to the purchase of furniture for her dwelling-house or jewelry for her person, no one will question that those articles would belong to her estate, and we cannot see that the result would be otherwise if she had transferred the same proceeds into stocks or mortgages in her individual name. The testator's gift over of anything remaining of his estate was a gift of anything which the widow should not elect to sell (Luckenbach v. Luckenbach, 175 Pa. 484), and not of what, having sold, she had not also consumed." This case is cited for its sound common sense.

We conclude, therefore, that as against the remainderman, the estate of Clare H. Russ is entitled to credit for the appraised value of every item of personal property that came into her possession as the widow of Eben J. Russ, and which was sold, given away, exchanged, or otherwise disposed of by her, except in the case of the stock of the Columbian Carbon Company, a West Virginia corporation, which, under a plan approved by Dr. Russ in his lifetime, had been deposited by him for exchange for stock of a Delaware corporation of the same name, such exchange having been actually made by Mrs. Russ after his death, and the stock of the Delaware corporation, so received by her in exchange, having remained undisposed of at her death; and except also $6000 of the notes of the Kinzua Valley Chemical Company, of which there were three aggregating $12,000—one for $4000, one for $3000, and one for $5000—which were exchanged by Mrs. Russ for two notes of the same company for $6000 each, one of which was given by her to the petitioner. Her power of disposition being absolute, her good faith is in no way involved.

But what shall we say of the notes that were paid and of the bonds that were called or matured and paid? Such transactions on the part of Mrs. Russ did not involve any voluntary act of disposition by her and should not, therefore, be regarded as dispositions made by her. We would include all such items in that portion of the estate taken by her which remained undisposed of at her death. . . .

### Supplemental opinion sur exceptions

Now, June 15, 1932, after argument and due consideration, all of the exceptions, except as hereinafter stated, are dismissed.

So much of the nineteenth exception filed by the executors of the last will and testament of Clare H. Russ, deceased, and J. Belmont Mosser and George J. Green, two of her residuary legatees, as complains of the inclusion by the court, in its computation of the amount to be paid Eben George Russ, of the interest accrued on notes of the Kinzua Valley Chemical Company to the date of the death of Dr. Eben J. Russ, $145.17, is sustained.

The twentieth exception filed by said executors and legatees, which complains of the inclusion by the court, in its computation of the amount to be paid Eben George Russ, of the interest accrued on bonds to the date of the death of Dr. Russ, $2488.36, is sustained.

There is nothing in the record to show that any of this accrued interest was received by Clare H. Russ, and we erred in including it among the items of property taken by her as beneficiary under the will of her husband and as property so received by her which remained undisposed of at her death.

The decree of the court is accordingly corrected to read as follows:

### Decree

Now, June 15, 1932, the executors of the last will and testament of Clare H. Russ, deceased, are ordered and directed to pay to Eben George Russ the sum of $302,206.14 in full payment and satisfaction of all such sum or sums of money, legacies and bequests as are given and bequeathed to said Eben George Russ as remainderman by the last will and testament of Eben J. Russ, deceased; the petitioner and estate of Clare H. Russ, deceased, each to pay one-half the costs; and as thus corrected is made absolute.

From John H. Cartwright, Ridgway, Pa.