## Lininger's Appeal.

1. A testator conferred upon his wife, first, full and exclusive power over his real estate during her life, "to be held and enjoyed by her as her own;" second, by the power to take into possession, hold, or convert into cash his entire personal estate, and "to use for her support and maintenance as much thereof as she may see proper for that or any other purpose;" and also directed that his executors should not act until after the death of his widow:

*Held,* that under this will the widow was sole judge of her own necessities and desires, and that an absolute power of disposition of testator's personal estate was vested in her.

June 3d, 1885. Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. PAXSON, J., absent.

APPEAL from the Orphans' Court of *Franklin county:* Of May Term 1885, No. 20.

This was an appeal by John Lininger and Samuel B. Lininger, executors of and legatees under the will of Samuel Lininger, deceased, dismissing their exceptions to and confirming the report of the Auditor appointed to distribute the balance in their hand as executors.

The facts of the case were substantially as follows: Samuel Lininger died April 11th, 1880, leaving to survive him a widow, Margaret Lininger, and four children, viz., John, Samuel B., Susan and Lydia. By his will dated January 28th, 1880, said Samuel Lininger provided as follows:

"First, I order and direct that my debts and funeral expenses be paid immediately after my death.

"I will and direct that my wife, Margaret Lininger, shall have the use and occupancy of all my real estate during her natural life, to be held and enjoyed by her as her own.

"Next, I will and direct that after my death she shall take possession of all my personal property, and bonds, notes, accounts, and other evidences of indebtedness, and hold or con-

vert the same into cash, as she may see proper, and if the proceeds of my real estate be not sufficient to support her she is at liberty to take as much of the personal fund or money as she may see proper for that or any other purpose.

"After the death of my said wife, and the payment of her debts and funeral expenses, I direct that my estate be settled up :

"First, I direct that my real estate be sold and my executors hereinafter named be empowered to make and deliver a deed or deeds for the same, as fully as I could if living, to the purchaser or purchasers.

"The proceeds of my said real estate and personal, left in the hands of my said wife at the time of her decease, I direct to be divided equally between my four children. If any of them be dead their heirs shall take the share that their parent would have taken if living. Should any of them die before the death of their mother without issue then the share due that one shall go to my other children.

"I name, constitute and appoint as executors of this my last will my two sons, John and Samuel B. Lininger, with the understanding, however, that they are not to enter upon their duties as executors until after the death of my said wife, Margaret Lininger."

This will was admitted to probate but no letters were issued thereon.

Shortly after his death, and while the widow was still living, testator's daughters, Susan Etter and Lydia Sites, presented a petition asking that the executors take out letters and settle the estate. An order was made to take out letters, which the Supreme Court subsequently reversed. (See Lininger's App., 5 Outerbridge, 161.)

The widow, Margaret Lininger, died on January 29th, 1883, and shortly afterwards letters testamentary were granted to John and Samuel B. Lininger, the executors named in the will of said Samuel Lininger deceased.

The daughters then presented a petition to the Orphans' Court asking that these executors be discharged. The court discharged Samuel B. Lininger ; and subsequently John, the remaining executor, filed his first and final account, showing a balance of $4,469.26 for distribution among the four children.

To this account exceptions were filed because the accountant did not charge himself, *inter alia*, with a judgment entered against Samuel McElhare in the court of common pleas of Franklin, April 2d, 1879, for $6,000, and interest, which exceptants claimed belonged to the estate.

An Auditor (W. U. Brewer, Esq. ) was appointed to pass upon the exceptions filed and make distribution of the balance

among those entitled.    At the hearing before him it appeared that the judgment against McElhare, as above, was part of the estate of the testator at the time of his death, and that on April 17th, 1882, his widow satisfied the judgment., and on the same day a judgment was confessed for a similar amount by McElhare in favor of her son, Samuel B. Lininger.    The Auditor found as a fact that this was done with the intention of making a gift of this sum to Samuel B. Lininger, and decided that Margaret Lininger had no right, under the will, to make a gift of this judgment which decedent held at the time of his death against Samuel McElhare.    He therefore surcharged the executors with amount of this judgment.

Exceptions were filed to this report, which the court, ROWE, P. J., dismissed, and a decree. was entered in accordance with the report of the Auditor.    Whereupon this appeal was taken, this action of the court being assigned error.

*W. Rush Gillan* (*John R. Orr, William S. Stenger* and *James A. McKnight* with him), for appellants.—The will provided that the widow was " at liberty to take as much of the personal fund or money as she may see proper for (her support) or any other purpose."    This court has said, in passing upon this very will: " To her is given the sole power and exclusive right to decide how much thereof she shall use and consume.    No one can call her to an account for so doing. No one can interfere with the right of possession to every part thereof ": Lininger's App., 5 Out., 161.

*J. D. Ludwig* and *Thad. M. Mahon* (*F. M. Kimmell* with them), for appellees.—The facts as found by the Auditor and confirmed by the court will not be disturbed except for manifest error: Roddy's App., 3 Out., 10.    As to her right to make a gift, we hold that, under the finding of this fact, the widow was simply the custodian of the personal fund during her lifetime and never its owner.    Besides the finding of the Auditor, the widow was the sole judge as to whether she would use or consume the personalty for her own welfare and comfort, and she judged not to use and consume it, and that is sufficient for the purpose of this case.

Mr. Justice GORDON delivered the opinion of the court, October 5th, 1885.

We cannot regard it otherwise than as remarkable that, in the face of the very clear and explicit terms of the will of Samuel Lininger, and the previous intimation of this court, as found in Lininger's App., 5 Out., 161, these appellants should have been surcharged with the McElhare

[Lininger's Appeal.]

judgment. In that case the attempt was made, in contravention of the expressed will of the testator, to compel the executors to take out letters, but we refused to sanction the effort thus made. Mr. Justice MERCUR, in delivering the opinion of this court, remarked *inter alia :* " An inventory or appraisement of the property, all of which may be consumed by the widow at her pleasure, would be useless if made." We need hardly add, that this decision positively settled the construction of the will in favor of the widow's absolute right of disposition so far as the personalty was concerned ; otherwise the executors must have had duties to perform during her life, in the way of controlling her use of the property, which would have required the taking out of letters. If then, as the learned justice says, she could consume the personal estate " at her pleasure," without restraint of any kind, I cannot understand how it could have been put more completely in her power, neither do I understand why, having such absolute control over it, she could not give it away if she chose so to do. The intention of the testator cannot be doubted, for it is expressed in the plainest possible language on the face of the will. He confers upon his wife, (1) full and exclusive power over his real estate during her life, " to be held and enjoyed by her as her own." (2) The power to take into possession, hold, or convert into cash, his entire personal estate, and to use for her support and maintenance as much thereof as she may see proper "*for that or any other purpose.*" (3) That there might be no one having a shadow of legal right to call in question, or interfere with, this her absolute and unqualified right of management and disposition of the property thus bequeathed to her, he declares that his executors shall have no power to act as such until after his wife's decease.

If all this is not sufficient to vest in the wife an absolute power of disposition over the testator's personal estate, we know not what language would suffice for that purpose. The case is even stronger than that of Cox *v.* Rogers, 77 P. S. R., 160, or Myers' App., 48 Id., 26 ; in the first of which, under a will reading as follows, " my wife is to have the whole of my personal property to enable her to raise, support and provide for the younger part of the family, and at the death of my wife what part of my personal property is then to be had shall be equally divided among my daughters," it was held that the gift was absolute to the wife. In the second, a bequest, " unto my beloved wife Ann, as much of my personal property as she chooses to retain ; " held to pass the whole personal estate, choses in action included.

It is urged, however, that she was permitted to make use of the personal property only in case the proceeds of the realty

[Maulfair's Appeal.]

were insufficient for her support, and that in the absence of
that contingency she could use it for no other purpose. This
is a mistake; for as she was empowered to use so much of the
personal fund or money as she might think proper for her
maintenance or "for any other purpose," we cannot thus limit
her power. To support the hypothesis as stated, we must
ignore the important phrase last cited, and this would be an
unwarranted mutilation of the will. As, then, she was clothed
with the power to take possession of, convert and dispose of
this personal estate for her maintenance, or otherwise, as she
saw fit, who was to be the judge of how, or when, she was to
exercise that power? Whether her necessities required the
use of the personal fund; whether it should be appropriated
only to her own personal use, or whether she might give it
away? There were and could be no executors until after her
death, and, as we have already determined, the Orphans' Court
had no control over the matter, so that if the widow was not
the sole judge of her own necessities and desires, the will has
no meaning.

In order, therefore, to sustain the will before us,
and give force to Samuel Lininger's bequest
to his widow, we reverse the decree of the
court below as to the surcharge of the McEl-
hare judgment ($7,332.00), and the distribu-
tion made of the same, and affirm the balance
of said decree. We also order that the costs
of this appeal be paid by the appellees.