## Strawbridge's Estate.

*Franklin E. Barr,* for exceptions.

*Benjamin B. Hoar* and *Robert T. McCracken,* contra.

GEST, J., Jan. 9, 1931.—The testator by his will provided as follows: "Item Second: I give and bequeath the sum of Fifty Thousand Dollars ($50,000)

to my wife, Mary R. Strawbridge, absolutely. Item Third: All the rest, residue and remainder of my estate, real, personal and mixed, I give, devise and bequeath unto my wife, Mary R. Strawbridge, for and during all the term of her natural life, and I direct that the same shall be transferred to and held by her without her entering security therefor."

At the audit of the executor's account the Auditing Judge awarded "to Mary R. Strawbridge $50,000 absolutely and the residue to her for life without security." Mary R. Strawbridge having died, this account is filed by her executor in the estate of William C. Strawbridge, the testator, and as of the same term and number. The Auditing Judge held in his adjudication as follows: "After the adjudication upon the account of the executor of William C. Strawbridge's estate, and the award to the widow, and payment made to her consequent to such award, the assets ceased to be part of the estate of William C. Strawbridge, and became the property of his widow. She thereby became the debtor to the remaindermen for the amount so awarded. The remaindermen are entitled to receive in cash the full amount of the estate according to the value that it had at the time of the award to Mrs. Strawbridge. Any loss that may have occurred must be borne by her estate; any enhancement is not shared in by the remaindermen. See Reiff's Appeal, 124 Pa. 145; Letterle's Estate, 248 Pa. 95; Weir's Estate, 251 Pa. 499; Kirkpatrick's Estate, 284 Pa. 583." And, consequently, the Auditing Judge refused to audit the account and directed that the same be returned to the clerk's office marked "Not Audited."

The Auditing Judge was undoubtedly correct in his ruling, and it is not necessary to repeat what was said in his adjudication. It cannot be doubted that under the decisions of the Supreme Court the assets so awarded to Mary R. Strawbridge for life became her own to be accounted for by her executor with other assets of her estate, and the question is not merely a technical one of procedure, as in Letterle's Estate, 23 Dist. R. 471, 248 Pa. 95, where the assets held for life had increased in value, but here it is important in that it appears that the assets held by her have depreciated in value and this loss must be borne by her estate.

We entirely agree with the opinion of the Auditing Judge that the widow was not a trustee. There is nothing in the will to support this theory, and the letter written by the testator to his executor, and considered as having been formally offered in evidence, gives it no aid. Even if it be considered as testamentary in its nature, yet its marginal note refers to a will dated Feb. 25, 1903, which was necessarily superseded and revoked by the last will, which was dated May 6, 1903. In our opinion this letter has no bearing on the question before us.

The will of the testator expressly relieved the life tenant from giving security, and some reference was made at the argument to the effect of a bond in cases like the present. We, therefore, deem it advisable to state our opinion that the entry of security, or its waiver by the testator, does not affect the rights of the life tenant or remaindermen.

According to the early common law, a life estate in personal property, with remainder over, could not be created, and a gift for life carried the entire estate: 2 Kent Com., 352; Swinburne on Wills (7th ed.), 256, note. But limitations over after a life estate were recognized in equity under wills, even without the intervention of a trustee, though it was always held that the life tenant was entitled to the possession of the thing so bequeathed, and this right carried with it the power to make his possession valuable, according to

circumstances. Consequently, he could convert the property into another form or change the investments, not as trustee, however, but by virtue of his title, though it necessarily followed that the life tenant or his estate would be liable to the remaindermen for any depreciation. This is the principle underlying what was said by Judge Hanna in Reiff's Estate, affirmed by the Supreme Court, in 124 Pa. 145, that the result was in effect to make the sum received by the life tenant a part of his individual estate. In this case, and in others that followed it, such as Letterle's Estate, 23 Dist. R. 471, 248 Pa. 95, a bond had been given by the life tenant, and the court laid some stress on that fact; but whether such security be entered or not, it seems to us that the title of the life tenant to the *res*, the thing which is the subject of the bequest, is not affected. That title is given by the will; the entry of security is only a requirement to be complied with in order that the life tenant may gain possession, and by which the remaindermen are enabled to enforce a liability which existed independently. In Westcott *v.* Cady, 5 Johns. Ch. 349, Chancellor Kent said: "Formerly the *cestui que trust* or legatee entitled in remainder after an estate for life was allowed to call upon the legatee for life, not only for an inventory, but for security that the goods should be forthcoming at his decease: Vachel *v.* Vachel, 1 Ch. Cas. 129; Hyde *v.* Parratt, 1 P. Wms. 1; Slanning *v.* Style, 3 P. Wms. 334. But the rule of practice has since been altered, and in Foley *v.* Burnell, 1 Bro. 274, Lord Thurlow observed that the courts do not now require the tenant for life to give security, but only to exhibit an inventory to be filed." In this latter case, however, it was further stated by Lord Thurlow that the court would require security in cases of danger. See Story on Equity, § 1162.

The decisions in Pennsylvania prior to the acts of assembly upon the subject recognize in general the procedure adopted by the Court of Chancery: King *v.* Diehl, 9 S. & R. 409, 423; Lippencott *v.* Warder, 14 S. & R. 115; Bitzer *v.* Hahn, 14 S. & R. 232, 238; Kinnard *v.* Kinnard, 5 Watts, 108. The Report of the Commissioners to Revise the Civil Code (appointed in 1830), 2nd Report, page 59, in order to remove any doubt regarding the power of the court, recommended to the legislature section 49 of the Act of Feb. 24, 1834, P. L. 70, 83, 1 Purd. 1133, providing that an executor should not be compelled to pay or deliver the property so bequeathed until security should be given. The later Act of May 17, 1871, P. L. 269, provided that upon such security being given, the fiduciary *must* deliver the bequest. The former act was for the protection of the accountant and of the remainderman; the latter confirmed the rights of the tenant for life, but there is nothing whatever in these acts or in the subsequent revised act, section 23 of the Fiduciaries Act of 1917, that qualifies or in any manner affects the title of the legatee, unless, under the provisions of the Act of 1917, a trustee is appointed.

The result is that on common law principles the legatee for life of personal property was the virtual owner and could do with it as he pleased. In equity, however, the rights of the remaindermen became gradually recognized: Fearne on Contingent Remainders, 402, etc.; which the chancellor protected by requiring security to be entered. The respective rights of the tenant for life and the remaindermen, however, are the same whether security is entered or not.

The exceptions are dismissed and the adjudication is confirmed absolutely.