## Gramm Estate.

Argued January 5, 1966. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

512

*Max W. Gibbs,* with him *Morton J. Sablosky,* for appellants.

*George S. Saulnier,* with him *Symington P. Landreth,* for appellee.

OPINION BY MR. JUSTICE JONES, March 22, 1966:

Under the terms of an inter vivos trust created by his mother on May 31, 1946, Theodore K. Gramm (testator), was given a general power of appointment of certain property of his mother.

Testator died January 15, 1961, and, by his will, he exercised this power of appointment in the following manner: "Sixth: All the rest, residue and remainder of my estate, real, personal and mixed, including any estate over which I have power of appointment, having in mind particularly the power of appointment [herein specific reference is made to the inter vivos trust created by testator's mother], I give, devise and bequeath *absolutely for life to my wife, Elizabeth M. Gramm, with full power of consumption of the entire principal estate if, in her judgment, her needs require the consumption of the principal.* In this connection I direct that any transfers or sales of securities which might be a part of my estate, may be made by her as though she were the sole and absolute owner without the interference of or consent of anyone else mentioned in this Will, or without any liability on the part of any transfer agent for making such transfer at her sole request. *If any principal should remain at the time of the death of my wife, . . ., then* I give, devise and bequeath any *remaining principal* to my sister, Ida

G. Betelle, absolutely. [A gift over followed in the event the sister predeceased the wife and a statement was made of the testator's "desire" that the wife create an agency account with a named bank to handle the investments of this portion of the estate]". (Emphasis supplied).

At the time of testator's death, the appointive property consisted of various securities carried at $34,846.93 by the Provident Tradesmen's Bank and Trust Co. (Provident), trustee under the inter vivos trust. In December, 1962—at which time the securities had a market value of approximately $51,000—Elizabeth Gramm (testator's widow) requested and Provident turned over to her these securities. The widow then sold the securities and invested the proceeds in shares of Institutional Foundation Fund, a mutual fund.

On December 27, 1962, the widow executed a declaration of trust the principal of which trust consisted of the shares of the mutual fund purchased from the proceeds of the sales of the securities received under testator's will. Under this revocable trust, the widow, as trustee, held the mutual fund shares for the benefit of her two nieces and she was to use the income, in the exercise of her discretion, for the benefit of her two nieces during her life and, upon her death, the principal of the trust was to go to the two nieces.

On March 16, 1963, the widow died. After her death, the two nieces—who were not only the beneficiaries under the trust but also the personal representatives and beneficiaries under their aunt's will—distributed to themselves the principal of the trust fund which at the time consisted of 5,381.619 shares of the mutual fund.

Testator's sister, Ida Betelle, the remainderman named under the Sixth paragraph of testator's will, petitioned the Orphans' Court of Delaware County for a citation upon the two nieces, in their representative

514

capacity, to show cause why they should not file an account on behalf of their deceased aunt in her capacity as trustee under the testator's will. The citation was issued, an answer was filed on behalf of the two nieces and the matter came on for hearing. After hearing, the court entered a decree directing that an account be filed of all assets held by the testator's widow at the time of her death which represented the proceeds of the sale of the assets obtained by her from Provident.

An account was filed wherein the nieces purported to account for the disputed assets in the following manner: "Total unconsumed assets held by [widow] as life tenant under the will of [testator] . . . —0—". Testator's sister filed objections to this account, further hearings were held and the court sustained the objections and again directed the nieces to account for such assets. From that decree this appeal was taken.

While ordinarily a decree directing the filing of an account is interlocutory and not appealable (*Eckfeldt's Appeal*, 13 Pa. 171; *Palethorp's Appeal*, 160 Pa. 316, 317, 28 A. 689; *Parmer's Estate*, 237 Pa. 229, 85 A. 148), the instant decree which, in addition to directing the filing of an account, directs the personal representatives to charge themselves with certain specific assets is appealable: *Williams' Estate*, 338 Pa. 98, 102, 12 A. 2d 103; *Crist's Estate*, 106 Pa. Superior Ct. 571, 581, 162 A. 478.

This appeal presents a question which involves a new twist to an oft-litigated problem: where personalty is given absolutely by a husband to his wife for her life together with the full power of consumption of the entire principal, if, in her judgment, "her [the wife's] needs require" it, with a gift over to another person "[i]f any principal should remain at the time of the death of [the] wife", does the wife, in the exercise of her judgment, have the right to create a trust, of which

the principal is the personalty received from her husband, for the benefit of nieces of the wife and to the exclusion of the remainderman named in the will?

In this Commonwealth, limitations over after a gift of a life estate in personalty were early recognized, even without the intervention of a trustee, "though it was always held that the life tenant was entitled to the possession of the thing so bequeathed, and this right carried with it the power to make his possession valuable, according to circumstances."[1] See also: *Eichelberger v. Barnetz,* 17 S. & R. 293, 294 (1828); *Kinnard v. Kinnard,* 5 Watts 108, 110 (1836); *Holman's Appeal,* 24 Pa. 174, 178, 179 (1854); Bregy, Intestate, Wills and Estates Acts of 1947, p. 5954 et seq.

By the enactment of legislation—Acts of February 24, 1834, P. L. 73, §§46, 49, April 17, 1869, P. L. 70, May 17, 1871, P. L. 269 and June 7, 1917, P. L. 447, §23, 20 P.S. §635—security was required to be given by the life tenant of personalty for the protection of the remainderman. The case law which developed considered the relationship between the life tenant and the remainderman where personalty was given for limited period and with a gift over, without the intervention of or the creation of a trust, to be that of debtor and creditor; the life tenant became a debtor to the remainderman in the amount originally received by the life tenant and the remainderman became a creditor of the life tenant or his estate for the value of the personalty when received.[2] Up until 1931 (*Strawbridge's Estate,* 14 Pa. D. & C. 703), the decisions all involved situations where the courts were determining the rela-

---

[1] See: *Strawbridge's Estate,* 14 Pa. D. & C. 703, 704, 705 wherein is contained an excellent discussion of the general subject by Judge GEST.

[2] *Reiff's Appeal,* 124 Pa. 145, 149, 16 A. 636; *Letterle's Estate,* 248 Pa. 95, 97, 98, 93 A. 935; *Kirkpatrick's Estate,* 284 Pa. 583. 586, 587, 131 A. 361.

tionship between the life tenant and remainderman where the former had entered security or where the entry of security was expressly waived either by the provisions of the will or by agreement of the parties.[3] However, in *Strawbridge's Estate,* supra, where the court was confronted with a situation where the life tenant had neither entered nor been excused from entering security, the late Judge GEST ruled that the rights of the life tenant and the remainderman were the same whether security was entered or not. See also: *Gillett's Estate,* 130 Pa. Superior Ct. 309, 318-321.

Finally, in *Powell's Estate,* 340 Pa. 404, 409-412, 17 A. 2d 391, this Court, reaffirming the existence of a debtor-creditor relationship between the life tenant and remainderman of personalty, held (a) the life tenant was responsible only for the value of the estate at the date of distribution and not for any increase of the value of the fund thereafter, (b) even though a life tenant posts no security, the life tenant remains a debtor to and not a trustee for the remainderman[4] and (c) legislation requiring a life tenant of personalty to post security did not apply to a life tenant to whom had been given the power of consumption of principal.

When the legislature enacted the Estates Act of 1947 (Act of April 24, 1947, P. L. 100, §13, 20 P.S. §301.13) it provided, inter alia: "A person having a present interest in personal property, or in the proceeds of the conversion of real estate, which is not in

---

[3] In the case at bar, no security had been posted nor had the posting of such security been waived.

[4] The only case, which our research discloses, which takes the position that a bequest for life of personalty with power to consume did not, in all instances, create a debtor and creditor relationship between the life tenant and the remainderman is *Lyman Estate,* 366 Pa. 164, 76 A. 2d 633. *Lyman,* however, can be distinguished on the ground that the majority of the court found that the testator had intended that the debtor-creditor relationship should not be applied.

trust, and which is subject to a future interest, shall be deemed to be a trustee of such property, and not a debtor to the remainderman, with the ordinary powers and duties of a trustee, except that he shall not be required to change the form of the investment to an investment authorized for Pennsylvania fiduciaries, nor shall he be entitled to compensation as trustee . . . ." The impact of this statutory provision is that: (1) since January 1, 1948—the effective date of this statute—legal future estates cannot be created in personalty and all such estates are now treated as trusts with the life tenant, or another person appointed in his stead by the court, acting in the capacity of trustee; (2) the life tenant is now subjected to all the rights and duties of a trustee, except as provided otherwise by the statute; (3) the life tenant or his estate must account for the value of the estate coming into his possession together with any increase in value during the period of the trust. This statute, with its drastic change in this area of the law, controls the instant proceedings. The widow, upon testator's death, became a trustee of that which she received for the benefit of the remainderman-sister of the testator.

An examination of the testator's will clearly reveals that testator's widow was given a life estate with *full* power of consumption of the *entire* principal estate and that she was given the authority to consume the principal even to exhaustion. However, the testator unequivocally placed a restriction and limitation upon the widow's consumption of the principal when he provided that such consumption should take place only. if the widow, in her judgment, deemed that "her needs" required such consumption, i.e., the consumption of the principal, was to be measured by the widow's "needs". That the testator gave his widow vast powers over the principal, restricted only by the exercise of such powers for her own "needs" and in good faith, is clear not

only under the language of the will but also under our case law: *Dickinson's Estate,* 209 Pa. 59, 58 A. 120; *Keown's Estate,* 238 Pa. 343, 86 A. 270; *Fassitt v. Seip,* 240 Pa. 406, 87 A. 957; *Rumsey's Estate,* 287 Pa. 448, 135 A. 119; *Seigworth's Estate,* 61 Pa. Superior Ct. 235; *Zumbro v. Zumbro,* 69 Pa. Superior Ct. 600; *Fidelity T. & T. Co. v. Nibozin,* 88 Pa. Superior Ct. 113. However, the intent of this testator to place a definite restriction on the consumption of principal is emphasized by the fact that testator contemplated the possibility that the principal might not be exhausted to meet the widow's "needs" since he provided a gift over "[i]f any principal should remain at the time of the death of the [widow]".

Testator's widow, after testator's death, went to Provident which held the securities under the inter vivos trust and requested delivery to her of such securities; upon their receipt, she sold them and with the proceeds purchased new securities for the disposition of which she created a trust. Such facts are not controlling; it would be "a novel proposition that a life tenant can make herself owner in fee by asserting she is such": *Rumsey's Estate,* 287 Pa. 448, 453, 135 A. 119.

We recognize that, as a general rule, courts will not interfere with the first taker's control of the personal property unless the remainderman makes out a strong case requiring interference (*Richey's Estate,* 251 Pa. 324, 96 A. 748; *Mercur's Estate,* 151 Pa. 49, 24 A. 1094; *Zumbro v. Zumbro,* 69 Pa. Superior Ct. 600, 603) and that the amount required by the widow for her "needs" rests entirely upon the exercise of her own judgment, the exercise of which cannot be limited or controlled by the courts in the absence of fraud or bad faith (*Henninger v. Henninger,* 202 Pa. 207, 51 A. 749; *Tyson's Estate,* 191 Pa. 218, 43 A. 131; *Yetzer v. Brisse,* 190 Pa. 346, 42 A. 677; *Lininger's Appeal,* 110 Pa. 398, 1 A. 722.)

However, the actions of the life tenant—widow in the case at bar—were such as to command judicial interference that the clearly expressed intent of the testator be not completely thwarted. The proceeds of the gift made under the will were taken by the life tenant—widow and, literally, given away to her own kindred. The will clearly shows the testamentary design of the testator; the property disposed of in the Sixth paragraph of the will which is the subject of this litigation was the property of testator's mother over which she had given testator the power of disposition; in making such disposition, the primary object of testator's bounty was his wife and to her he gave this property in such manner that she was to have not only the income therefrom but even the principal *if* she needed it and she was to be the judge as to whether she needed to consume the principal, in whole or in part; however, *if* she did not *need* to consume the principal, in whole, or in part, he then provided that whatever remained of the principal when she died should be given to his sister, the only relative having a common blood line with the original owner of this property. Despite this clearly expressed design of the testator, the life tenant-widow sought to change the testamentary plan and, through the medium of a trust, to dispose of the property to her own blood relatives to the exclusion of testator's blood relative specifically designated by testator as the second taker of the property. The record portrays an attempt on the part of the life tenant-widow to divert this property to a purpose other than that provided by the will, a diversion which cannot be countenanced.

In *Tyson's Estate,* 191 Pa. 218, 226, 227, 228, 229, 43 A. 131, this Court said: ". . . [testator's] intention was to give [his wife] so much, and only so much, though possibly amounting to the whole, as should be necessary for her own comfort and enjoyment of life,

and the residue, be it much or little, was to pass under his will. This disposition of his estate violated no rule of law. . . . But, the purpose being clear and lawful, it is the duty of courts to see that it is carried out and not defeated for mere inconvenience of form. The extent of the widow's consumption of the estate was within her control. Her decision was without appeal, but it must have been honestly reached in accordance with the purpose the testator intended, and not merely colorably to defeat his will. She had power to carry out his intentions by sale, transfer and consumption of the proceeds in such a way as to leave nothing at her death. But a transfer with intent not to consume for herself, but to preserve for others after her death, and to change the beneficiaries after her from those chosen by her husband to others of her own selection would be a fraud on the testator and his will. . . . The test in all such cases is the good faith of the action of the beneficiary. If it is an honest exercise of the discretion with which the testator has clothed him his action is conclusive, but he cannot be permitted to make use of the mere form to defeat or evade the true intent and pervert the gift to a different purpose." See also: *Johnson Estate*, 359 Pa. 645, 650, 59 A. 2d 877.

By operation of law, this life tenant-widow occupied the status of a fiduciary with respect to the property bequeathed; her diversion of such property to a purpose other than that provided by the testator's will was a breach of her fiduciary duties, a breach which the courts must not overlook.

The nieces as the personal representatives of the life tenant-widow's estate must render an accounting. Such accounting must account for the value of the property at the time the securities were delivered to the life tenant-widow together with any income payable to the nieces from the time of such delivery and any accretion in value from the time of the receipt by the life

tenant-widow of these securities until the time of her death.[5]

Decree affirmed. Appellants to pay costs.

Mr. Justice MUSMANNO dissents.

---

[5] Of course, any depreciation in the value of the securities would be borne by the remainderman: *Lyman Estate*, supra.