Sumney Estate.

Argued March 15, 1967. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Edward A. Witt,* with him *Michael H. Kowallis,* and *Witt & DeCello,* for appellants.

*Lloyd H. Fuge,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, May 2, 1967:

Dr. Frank F. Sumney died March 20, 1938, leaving a will dated June 20, 1936. He was survived by his widow, Bessie* and by Weir M. Sumney,** Janet S. McMullen and Ruth Hughes, three children by a former marriage.

---

\* Sometimes spelled "Besse," who was most commonly known as "Bess."

\*\* Hereinafter referred to as "Weir Sumney," the name by which he went.

In President Judge BOYLE'S adjudication, he decided that (as to the stocks and assets in dispute) Bess bore the relationship of *trustee* to the remaindermen under Dr. Sumney's will. Judge BOYLE rejected the contention that Bess's relationship to the remaindermen was that of a debtor-creditor relationship. Exceptions to this adjudication were dismissed by the Orphans' Court en banc. Bess's nephews and nieces who were legatees of two-thirds of *her* residuary estate have appealed.

The basic questions involved raise the issue (1) whether under Dr. Sumney's will his widow was a trustee of his residuary estate or occupied toward his three children who were his remaindermen the relationship of debtor-creditor, and (2) if the latter, did the widow and testator's three children agree that she held testator's residuary estate as trustee for all of them, and thus abandon whatever claim she had to the relationship of debtor-creditor?

The facts are so important and so unusual that we believe they should be recited at length. Moreover, the two issues are so *interrelated in this case* that we shall have to discuss all the facts in chronological order.

The dispositive clauses of Dr. Sumney's will are as follows:

"I. I leave to my wife, Bess Sumney, all my real estate and personal property of which I may die possessed or which may accrue to my estate in the future to have and to hold during her life or while she may remain my widow.

"II. At her death or remarriage, *all of said property shall revert to my children** by marriage to my first wife with the sole exemption of one thousand $1,-000 which shall be paid to my grandson, Frank F. Sumney, Jr., son of Weir M. Sumney."

---

* Italics throughout, ours.

Bess qualified as administratrix c.t.a. She also elected timely to take under the will. The estate consisted of personalty appraised at $10,610.70, and realty appraised at $6,075. Several years later Bess filed her account (of personalty only) as such administratrix.* This account showed a balance for distribution of $7,- 202.98 consisting of stock appraised at $6,312 and other personal property.

On *February 23, 1939,* the account came on for audit before Judge MITCHELL. All parties in interest had actual notice of the audit. The audit statement (Petition for Distribution) included the following averment: "(m) The balance for distribution is made of stock listed, numbered and appraised, fully set out in the Inventory and Appraisement herewith filed and made part hereof and being the original and identical shares left by the decedent, the income there from payable to Bess Sumney, widow, for life or widowhood."

*At this audit,* Bess's attorney informed the Court that the will gave Bess an estate for life or during widowhood and suggested to the Court that the stocks (which comprised almost all of the estate) "would be decreed back to her and a bond given."

On *March 7, 1939,* a Decree was entered confirming the account and including in the Schedule of Distribution this award: "To Mrs. Bess Sumney, widow, *Trustee* for purposes specified in the Will, balance viz; upon filing bond in the sum of $14,000 . . ." (Then follows a list of shares of stock and other personal property of a value of $7,147.77.)

---

* At the time of this audit, personal representatives were not accountable for real estate; hence testator's real estate was not included in the account or schedule. It was not disposed of during Bess's lifetime, and the parties hereto have stipulated that the disposition of such real estate is not presently an issue between the parties.

Family Agreements

On *March 22, 1939, all of the parties in interest,* namely, testator's widow and his three children, entered into *a family agreement,* by the terms of which (1) they divided between them certain shares of stock which they considered to be of no value, and (2) further agreed that J. M. Hughes and Weir Sumney should be released from liability on: (a) judgment note of J. M. Hughes ($660) and (b) promissory note of J. M. Hughes ($335) and (c) judgment note of Weir Sumney ($261).

On *May 25, 1939,* Bess and all the residuary legatees signed another agreement* waiving for a period of three years the requirement in the Court's Decree that Bess should file a bond in the amount of $14,000.

On *July 17, 1947,* Bess filed *in her husband's estate* an account styled "First Account of Mrs. Bess Sumney, *Trustee.*"

The "Audit Statement" (Petition for Distribution) presented at the audit of this account on *September 22, 1947,* was signed by Bess Sumney, *Trustee,* and *included* and had attached thereto *a copy of the aforesaid Family Agreement of May 25, 1939.* Furthermore, at the audit Bess Sumney testified as follows: "Q. You are Mrs. Bess Sumney? A. I am. Q. And did you file

---

* "Now Know All Men By These Presents, that we the undersigned heirs in fee of said stocks, being all of full legal age and having full and complete confidence in the honesty and integrity of the said *Trustee* and for value received do hereby jointly and severally waive the giving of said bond for a period of three years from the date hereof, at which time a second account can be filed.

"Witness our hands and seals this 25th day of May A.D. 1939.

| | |
|---|---|
| Janet S. McMullen | [seal] |
| Bess Sumney | [seal] |
| Weir Sumney | [seal] |
| Ruth Hughes | [seal]" |

an account as administratrix d.b.n. in this estate eight or nine years ago? A. I did. Q. It was audited? A. Yes. Q. Now, you are filing your first account *as trustee* in the estate of Frank Sumney? A. I am."

On *September 25, 1947* a decree was entered *confirming the trustee's first account* and distributing the balance shown by the account and audit, as follows:

"To Mrs. Bess Sumney, *Trustee* in trust for purposes specified in will, balance per Account, viz: Stocks,* present value ....... 5332.77
Cash, ....... 10.80  5343.57"

Bess died on *July 3, 1964,* testate. She had never remarried. Letters testamentary were granted to the Western Pennsylvania National Bank. By her will dated April 29, 1960, after specific devises of her own real estate and a specific bequest of an automobile, she bequeathed the residue of her estate (a) two-thirds to her own nieces and nephews and (b) one-third to the three children of her husband by his first marriage.

On August 6, 1965, the Bank as executor of Bess's estate filed its first and final account showing a balance of personalty for distribution of $35,159.49. At the time of the audit of *this* account, two of Dr. Sumney's children were still alive, but one daughter, Mrs. Janet McMullen, had died January 31, 1964 (before the death of her stepmother). At the audit of this account divergent claims were presented by Dr. Sumney's two living children** on the one hand, and (on

---

* Nearly all of the aforesaid stocks continued to be registered in the name of Frank F. Sumney. Four shares were registered in the name of Bess Sumney, Trustee. None of them were registered in Bess Sumney's individual name.

** Mrs. McMullen's executor appears to have had notice of the audit but did not participate in the litigation.

the other hand) by Bess's nephews and nieces because of the inclusion by Bess's executor in its account *in her estate* of the *same stocks* which had been awarded to Bess as trustee in the Court's Decree of March 7, 1939 and its Decree of September 25, 1947 *in her husband's estate*. As a result of stock splits, stock dividends and increases in market value, these same stocks were worth far more in 1947 than their appraised value at the time of Dr. Sumney's death, at which values they had been awarded to Bess *as trustee* in her aforesaid accountings in 1939 and in 1947.

The parties stipulated that as of the audit of Bess's estate, these stocks had an aggregate market value of $20,958.22.*

This Court has had occasion recently to consider the legal relationships which may arise out of a bequest of what is commonly known as a legal life estate in personalty. *Purnell Estate*, 424 Pa. 263, 226 A. 2d 488; *Moltrup Estate*, 424 Pa. 161, 225 A. 2d 676; *Gramm Estate*, 420 Pa. 510, 515, 218 A. 2d 342. See also *Lyman Estate*, 366 Pa. 164, 76 A. 2d 633.

Where a legal life estate was given to a life tenant (usually a widow) without power of consumption, the general rule was thus stated in *Purnell Estate*, 424 Pa., supra (page 266) : "... where a legal life estate in personalty was bequeathed with remainder to others, and with no power of consumption given to the life tenant, a life tenant could receive *absolutely and as her own, all* [emphasis in original] the property of which the testator gave her a life estate, thereby creating merely a debtor-creditor relationship between herself and the remainderman for the value of the property she actu-

---

* There was also included from Dr. Sumney's estate a 1935 Buick Sedan valued at $75, and a savings account in the Western Pennsylvania National Bank registered "In the name of 'Estate of Frank Sumney, Besse Sumney, *Trustee*,' " $212.23, making a total present value of the assets in dispute of $21,245.45.

ally received at the date of distribution. *This amount, and only this amount, was payable to the remainder- man upon the death of the life tenant.* Kirkpatrick's Estate, 284 Pa. 583, 131 Atl. 361; Weir's Estate, 251 Pa. 499, 96 Atl. 1086; Letterle's Estate, 248 Pa. 95, 93 Atl. 935; Reiff's Appeal, 124 Pa. 145, 16 Atl. 636. *We find no testamentary language in Ansby's* [Ansby Pur- nell's] *will which shows an intent to create a different relationship or result."*

At the time Dr. Sumney signed his will and at the date of his death this was a well established although artificial rule of construction. However, this rule was subject to the paramount rule that the intent of the testator must prevail, unless it is unlawful. *Schappell Estate,* 424 Pa. 390, 227 A. 2d 651; *Moltrup Estate,* 424 Pa., supra; *Purnell Estate,* 424 Pa., supra; *Wach- stetter Will,* 420 Pa. 219, 216 A. 2d 66; *Hoover Estate,* 417 Pa. 263, 207 A. 2d 840; *Houston Estate,* 414 Pa. 579, 586, 201 A. 2d 592; *Lyman Estate,* 366 Pa., su- pra. These cases reiterate the well established *guide- lines* which enable a Court to ascertain and determine a testator's intent, and are so recent that quotations therefrom are unnecessary.

We believe that an examination of Dr. Sumney's will makes clear *his intention* that all his residuary es- tate shall *"revert"* to, i.e., go back to, his children by his first marriage. Thus by necessary implication Dr. Sumney (1) gave his wife, *not an absolute estate* or fee in the residuary estate which he left her for life or widowhood, but only, as he said, an estate for life or widowhood therein, and (2) gave all his aforesaid re- siduary estate with all its increases or decreases in value to his children by his first wife. Our interpreta- tion of the gifts in Dr. Sumney's will and his intent as disclosed therein is exactly the interpretation and agreement which was twice made by Dr. Sumney's

*widow and all his children,* and was also the repeated interpretation of the Courts.

The law is well settled that where all of the parties in interest in the questions involved agree on an interpretation of the testator's will—especially if it is a family agreement and a fortiori if the family agreement is, as here, approved by the Court—that interpretation will be approved by this Court. *Fry v. Stetson,* 370 Pa. 132, 87 A. 2d 305; accord *Little Estate,* 403 Pa. 534, 539, 170 A. 2d 106; *Loewer's Estate,* 263 Pa. 517, 106 Atl. 789.

In *Fry v. Stetson,* 370 Pa., supra, the Court said (page 135) : "Family agreements or settlements are always favored in the law and when fair are valid and will be upheld whenever possible: Edelman's Estate, 336 Pa. 4, 10, 6 A. 2d 511; Iacovino v. Caterino, 332 Pa. 556, 2 A. 2d 828; Braunschweiger's Estate, 322 Pa. 394, 185 A. 753. Speaking with more particularity, *family agreements construing wills are, in the absence of fraud, binding* (Strawbridge's Estate, 322 Pa. 406, 185 A. 726; Wilen's Appeal, 105 Pa. 121), even though based on an error of law: Disston Estate, 349 Pa. 129, 36 A. 2d 457; Follmer's Appeal, 37 Pa. 121; Hunter, Orphans' Court Commonplace Book Vol. 1, pp. 519, 522, 525."

For this additional reason, namely, that all parties in interest have entered into a family agreement, viz., that Bess occupied a trust relationship with her husband's children who were the remaindermen under his will—a relationship which is utterly inconsistent with a debtor-creditor relationship—which is a controlling interpretation of Dr. Sumney's will, and we believe merely implements the testator's clearly expressed intention. We therefore confirm the conclusion and decision of the Court below that the stocks which Dr. Sumney gave to Bess for her life or her widowhood, together with all the increases and increments thereof,

belong to Dr. Sumney's children, and that Bess's gift to *her* nephews and nieces of two-thirds of these stocks (together with all their increments) was invalid.

We have considered all the contentions of the appellants and find no merit in any of them.

Decree affirmed, each party to pay own costs.

Mr. Justice JONES and Mr. Justice EAGEN concur in the result.