## Folchman Estate

*Robert S. Gawthrop*, for accountants.

*Timothy H. Knauer*, p.p., guardian and trustee ad litem.

KURTZ, JR., P. J., March 27, 1974.—This decedent, who died April 6, 1972, left a will dated July 15, 1959, which provided, inter alia, as follows:

"SECOND: I give and devise unto my son, Norman L. Folchman, both of my farm properties situate in East Bradford Township, Chester County, Pennsylvania, for and during the term of his natural life, free and clear of all mortgages or other indebtedness thereon, with power to sell and convey the same, or any part thereof, or borrow money thereon, and to use any money derived therefrom from time to time, as he needs the same, for his proper maintenance and support, the operation of the farms, or to purchase other real estate, without accounting to anyone.

"THIRD: Upon the death of my son, Norman L. Folchman, whatever remains of the said properties

or the proceeds therefrom, I give, devise and bequeath unto his children." (This paragraph also appointed a guardian or trustee for the estates of any such children until they arrived at age twenty-one).

"FIFTH: I direct that all inheritance and estate taxes be paid from the residue of my estate.

"SIXTH: All the rest, residue and remainder of my estate I give and bequeath unto my daughter, Dorothy J. Plunkett."

Norman Folchman and his sister, Dorothy Plunkett, both survived decedent. Norman has four children, three of whom are minors.

Norman and Dorothy have entered into a family settlement agreement in which it is stated that as a result of the appreciation of real estate values between the date of the will and the date of testator's death, an inequality of distribution between the son and daughter would result if the provisions of the will are carried out, which would be contrary to decedent's intention. To overcome that situation, it was agreed: (1) that the stock and coins which were shown by the executors' account to comprise a part of the balance for distribution should not be sold but that they should be distributed to Dorothy; (2) that one of the two tracts of real estate which was an asset of the estate should be sold to raise funds to pay taxes and the expenses of distribution; and (3) that the remaining farm and all cash should be distributed to Norman. This agreement was based upon the assumption that Norman was entitled to receive a fee simple interest in both parcels of real estate under the terms of the will. In reaching that conclusion, the parties relied upon Lininger's Appeal, 110 Pa. 398 (1885), in which it was held that where a testator devised his real estate to his wife for life " 'to be held and enjoyed by her as her own' " and directed that she should take possession of all of his

personal estate to " 'hold or convert the same into cash, as she may see proper, and if the proceeds of the real estate be not sufficient to support her she is at liberty to take as much of the personal fund or money as she may see proper for that or any other purpose' " and provided further that upon the wife's death and the payment of her debts and funeral expenses, his estate should be settled; the widow was the judge as to how and when she should exercise the power to consume personalty thus conferred so that she could make a gift of an asset which she held as life tenant, thereby relieving testator's executor from accounting for that asset.

The executors of this testator's will have filed their first and final account which reflects the sale of one parcel of real estate pursuant to the terms of the settlement agreement and have presented a petition for adjudication in which they ask that distribution be decreed in accordance with the terms of the agreement. Inasmuch as the interests, if any, of Norman Folchman's children are prejudiced by the terms of that agreement, we appointed a guardian ad litem to represent those interests and those of any possible unborn children of the said Norman. The guardian has filed a report in which he challenges the conclusion upon which the family settlement agreement is based, asserting therein that Norman obtained only a legal life estate with power to consume by the terms of his father's will, and that the rights of his children as remaindermen following that life estate cannot be jeopardized by the distribution proposed. It is to the resolution of that controversy that we must here direct our attention.

Two principles of will construction have application. First, testator's intent must be ascertained by a consideration of the entire will. Second, a will must

be construed, if possible, so as to give effect to every word employed by testator, and a construction which renders any of the words nugatory and futile must be rejected: Vandergrift Estate, 406 Pa. 14, 26 (1962).

This testator clearly provided that Norman's inheritance consisted of a life estate only, and insured the interests of those who would benefit after the life estate had run its course by making provision for the distribution of that which remained or the "proceeds therefrom." In addition, he reckoned with the possibility that the life estate might be terminated before some of the remaindermen had attained the age of 21 years by appointing a guardian for the estates of those who might be subject to that disability. A reading of all of the provisions of the will which have to do with the disposition of the real estate leads to but one conclusion: that Norman was given a life estate which was enlarged by a limited power of disposition for the accomplishment of specified ends, and that upon his death those assets of the estate which remained or the proceeds thereof were to pass to his children. See Linn Estate, 435 Pa. 598 (1969); Gramm Estate, 420 Pa. 510 (1966); Brennan's Estate, 324 Pa. 410 (1936); Byrne's Estate, 320 Pa. 513 (1935); Kennedy v. Pittsburg & Lake Erie Railroad Company, 216 Pa. 575 (1907).

In reaching this judgment, we have not overlooked the provision in the second paragraph of testator's will which exempts the life tenant from accounting to any one for the management of the assets of the life estate. The will under consideration in Rumsey's Estate, 287 Pa. 448 (1926), contained a like provision. In holding that the personal representatives of the widow-life tenant's estate were required to deliver assets which their decedent had received under the provisions of her husband's will which remained after her death to the personal representative of the husband's estate,

the widow's power to consume being limited for her necessities or convenience, the court pointed out that during her lifetime her decision as to what was necessary or convenient was without appeal, except that it must be honestly reached in accordance with testator's intention and could not be merely colorable to defeat his will. See also Tyson's Estate, 191 Pa. 218 (1899). Thus, this life tenant, to whom the real estate was devised subject to similar restrictions, is limited to disposition thereof on fulfillment of his testator's expressed intention but the powers thus conferred cannot be utilized to circumvent that intention.

Since the account in the instant case records that real estate in East Bradford Township containing 78.428 acres, which was devised to the life tenant, was sold by the accountants for $156,900, $43,890.41 of which remains in the balance for distribution, and because the account also indicates that personal property having a value of $36,137.02, which, if administered in compliance with the terms of the will, would have been sold for the payment of administration costs and estate taxes, remains as part of that balance, we must next consider how the balance now before the court is to be divided. This requires a consideration as to how the assets should have been administered had the personal representatives acted properly in the circumstances.

The accountants have charged themselves with principal valued at $316,996.72, of which $280,600 represents the two farms devised to Norman under the terms of the will. Disbursements, including administration expenses, the family allowance, losses suffered in connection with the sale of securities, decedent's debts and taxes total $130,281.70. Thus, it is clear that decedent's personal estate fell far short of being adequate to pay his debts and the costs of administration.

Under the will, Norman received real estate of the value indicated, while Dorothy's residue inventoried at $36,083.90 was not adequate to pay the items charged against her share. Obviously, it was necessary to sell real estate even if the entire residue had been devoted to the payment of debts and expenses of administration. In these circumstances, Norman is entitled to all that remains, limited to the life interest which he was devised.

The more difficult question is whether he must post security before the cash portion of his inheritance may be delivered to him. Section 6113 of the Probate, Estates and Fiduciaries Code, the Act of June 30, 1972, (No. 164) 20 Pa. S. §6113, provides that a person having a present interest in personal property or in the proceeds of the conversion of real estate which is not in trust, and which is subject to a future interest, shall be deemed a trustee of such property. It also provides: "Such person, unless given a power of consumption or excused from entering security by the terms of the conveyance shall be required to enter such security for the protection of persons entitled to the future interests as the court in its discretion shall direct. If a person having a present interest shall not enter security as directed, the court shall appoint a trustee who shall enter such security as the court shall direct, and who shall exercise all the ordinary powers and duties of a trustee, except that he shall not be required to change the form of the investment to an investment authorized for Pennsylvania fiduciaries." Does the limited power of consumption conferred upon Norman by the terms of this will excuse this life tenant from the entry of security?

We think that it does. The power of consumption conferred by the instant will is as broad if not broader than the one considered in Powell's Estate, 340 Pa. 404 (1941). At page 411 of the Supreme Court's opinion it

was pointed out that the life tenant in that case was under no duty to enter security for the protection of the remaindermen. Quoting from Hambright's Appeal, 2 Gr. 319, 321 (1855), the court said:

" 'What sort of a bond shall she [life tenant] give? What shall be its penalty and conditions? Any bond that could be devised would limit her discretion, in a way never intended by her husband [testator]. He permitted her to decide for herself how much she should spend. If we put her under an obligation to consume none, or only a part, we take away her clear right. He gave to those in remainder nothing, in case she left nothing. If we secure them any particular sum, we award to them what they have no title for. It is argued, that she ought to give bond to use it providently, and to leave at her death, all that she does not need during her life. I repeat, that she alone is to be the judge of her wants. The testator gave her the *full* use of the money. He trusted her, and we must do the same.' " (Emphasis in the text). Accordingly, no security will be required.

The views herein expressed will be reflected in the adjudication filed herewith.