# PAYNE *v.* ROBINSON.

WILLS; LIFE TENANCY IN MONEY; EXECUTORS AND ADMINISTRATORS.

Where there is a bequest of money to a tenant for life, with remainder over, the principal should not be paid to the tenant for life, unless the language of the will shows with reasonable certainty that the testator intended it should be delivered into his possession. It is the duty of the executor to invest the money, and pay the interest, only, to the life tenant, preserving the principal for the remainder-men.

No. 1552. Submitted November 8, 1905. Decided December 5, 1905.

HEARING on an appeal by remainder-men from a decree of the Supreme Court of the District of Columbia, holding the Probate Court, directing the payment of a legacy to a life tenant.

*Reversed.*

The COURT in the opinion stated the facts as follows:

General William H. Payne, a resident of the District of Columbia, died therein on March 29, 1904, leaving a will disposing of his estate, executed January 28, 1904. By the terms of said will Leigh Robinson, Esq., was made executor thereof without security. Having procured the due probate of said will, the executor filed a petition in the supreme court of the District of Columbia, sitting for probate business, praying a construction of the eighth clause thereof, and that direction be given him as to the payment or retention of the legacy therein bequeathed to Arthur Morson Payne.

The eighth clause reads as follows:

"8th. In wills and codicils heretofore made I have separated the share of my son Arthur from the shares of the rest of

my children for reasons adequate and satisfactory to me. The reasons still continue, and I now bequeath to my son Arthur Morson Payne the sum of twenty-six thousand dollars ($26,-000), for and during the joint lives of himself and his wife Bettie; and, if my said son Arthur survives his said wife, then, upon her death, to him absolutely; and if his said wife survive him, then upon his death I give and bequeath the said legacy to the company now having an office on G street between 14th and 15th streets northwest, in the city of Washington, and known as American Security & Trust Company in and upon the following trusts and none other,—that is to say, in trust to invest, reinvest, and keep invested, and pay over the income to my said daughter-in-law Bettie for the full term of her natural life, and my said beloved and honored daughter-in-law is hereby empowered to bequeath said legacy to such of my children or grandchildren as she may elect; and, in case she does not exercise this power, then from and after her death the said legacy shall go to and be distributed among my own heirs; I should say my own next of .kin."

Upon the hearing of the petition, with all the necessary parties before it, the court entered a decree directing the executor to pay over to Arthur Morson Payne the said legacy of $26,000 and ordering that the receipt of said legatee shall acquit the said executor from further liability therefor. From this decree William W. Payne, Harry F. Payne, J. Winston Payne, C. Bland Payne, and Virginia Payne Hunton, being all, save the appellee, of the next of kin of the testator, have appealed.

*Mr. J. J. Darlington* for the appellants.

*Mr. Fred Harper* for the appellees.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. The will makes certain bequests in addition to that to Arthur Morson Payne, contained in the eighth paragraph, and

in the residuary clause gives one fourth of the remainder of the estate, after the payment of all charges and legacies, to each of the testator's four sons, William W., Henry F., John W., and Charles Bland Payne.

In the eighth paragraph the testator, after reciting that he has, for reasons adequate and satisfactory to him, separated the share of his son Arthur from the shares of the rest of his children, bequeaths to said Arthur Morson Payne the sum of $26,000 for and during the joint lives of himself and his wife Bettic. It is further provided that, if said son survives his said wife, the same is bequeathed to him absolutely, but, if his said wife shall survive him, then the said legacy is given in trust to the American Security & Trust Company, of the city of Washington, to invest, reinvest, and keep invested, and pay over the income to the said wife for the full term of her natural life, with power conferred upon her to bequeath the said legacy to such of the testator's children or grandchildren as she may elect. In case she does not exercise the said power, then, from and after her death, the same shall go to and be distributed among the testator's next of kin.

The question involved is, whether the executor shall at once pay over the entire amount of this legacy to Arthur Morson Payne, and be thereby discharged; or whether he shall retain the same during the life of the legatee's wife, paying to him only the income derived therefrom.

The rule of the English chancery in respect of the custody of chattels bequeathed to one for life with remainder over has been stated by Chancellor Kent as follows: "The interest of the party in remainder in chattels is precarious, because another has an interest in possession; and chattels, by their very nature, are exposed to abuse, loss, and destruction. It was understood to be the old rule in chancery, that the person entitled in remainder could call for security from the tenant for life, that the property should be forthcoming at his decease, for equity regards the tenant for life as a trustee for the remainder-man; but that practice has been overruled. Lord Thurlow said that the party entitled in remainder could call for the exhibition of an

inventory of the property, and which must be signed by the legatee for life, and deposited in court; and that is all he is ordinarily entitled to. But it is admitted that security may still be required in a case of real danger that the property may be wasted, secreted, or removed. And where there is a general bequest of a residue for life, with remainder over, the practice now is to have the property sold and converted into money by the executor, and the proceeds safely invested, and the interest thereof paid to the legatee for life." 2 Kent, Com. p. 354. See also *Howe* v. *Dartmouth,* 7 Ves. Jr. 137, 2 White & T. Lead. Cas. in Eq. 4th Am. ed. 676, and English and American notes.

In Maryland, from whence our jurisprudence is derived, the later English rule has been adopted and made to depend, not so much on the difference between a specific and a residuary bequest, as on whether the nature of the property is such that it can be enjoyed without being actually possessed. *Evans* v. *Iglehart,* 6 Gill. & J. 171, 196; *Wootten* v. *Burch,* 2 Md. Ch. 190, 199; *Miller* v. *Williamson,* 5 Md. 219, 236; *State use of Taylor* v. *Brown,* 64 Md. 97, 100, 1 Atl. 410.

The distinction that has been made between chattels of one kind and another, as regards their uses, is of no importance in the determination of this case, because we have here a specific bequest of money that is clearly governed by the rule, in the absence of an express intention of the testator to the contrary. The same rule prevails in the other States, generally, where unaffected by statutes relating to wills and the administration of estates. In a case in the supreme judicial court of Massachusetts, where there was a bequest of money for life with remainder over, Chief Justice Shaw said: "I take it that nothing is now better settled than that such a gift is a gift of the interest only, and, if no trustee is specially named, it is the duty of the executor to invest the money, and pay the interest only to the person entitled for life, and preserve the principal for him who is entitled to take afterwards." *Field* v. *Hitchcock,* 17 Pick. 182, 28 Am. Dec. 288. The principal in such case must be held by the executor in trust. *Hooper* v. *Bradbury,* 133 Mass.

303, 307; *Ballard* v. *Chandler,* 149 Mass. 532, 537, 5 L. R. A. 104, 21 N. E. 951; *White* v. *Massachusetts Inst. of Technology,* 171 Mass. 84, 96, 50 N. E. 512. The same rule prevails in Virginia, of which State it was said on the argument that the testator, himself a distinguished lawyer, was a native, and also a resident until within a few years of his death. *Hawthorne* v. *Beckwith,* 89 Va. 786, 791, 17 S. E. 241. See also *Re McDougall,* 141 N. Y. 21, 27, 35 N. E. 961. Many other authorities may be found on appellants' brief and in Hare and Wallace's notes, 2 Lead. Cas. in Eq. 4th Am. ed. pp. 697 *et seq.*

That this rule is founded on broad principles of equity and sound public policy there seems to be no reasonable doubt. Under its operation, the legatee, who is entitled only to the use of the fund for life, whether delivered into his possession or not, receives all the benefit to which he is justly entitled, while the interests in remainder are fully protected.

2. It remains to consider whether there is a reasonable indication in the will of an intention that the possession of this legacy during the life of the first taker shall not be governed by the foregoing rule. If such an intention can be fairly deduced from the language used by the testator, not only in the eighth, but in other clauses of the will, it must necessarily control. The appellees, while not denying the existence of the rule, contend that very slight indications in the will will be construed as showing that the testator intended the life tenant, rather than the executor, to be the trustee. In support, they rely especially upon the case of *Re Garrity,* 108 Cal. 463, 38 Pac. 628, 41 Pac. 485, where the foregoing language is used in the opinion. The indications of the intention in that case, as recited in the opinion, were not slight, but rather strong.

The clause of the will was both a devise and bequest of all property, of every kind and character, to the wife, "to have, to hold, and to enjoy for the term of her natural life." The devise and bequest over was of the residue and remainder "remaining" after the termination of the life estate. It is to be noted, also, that, under the law of California, the wife was entitled absolutely to one half of the entire estate as community property,

and the husband could not deprive her of it. The powers and duties of executors are limited, also, by the Civil Code of that State. Influenced by all of these conditions, the court held the wife entitled to the possession. The Maryland case, also relied on to show that slight indications will be sufficient to show an intention to give the fund into the possession of the life tenant, seems, rather, to lead to a contrary conclusion. *Boyd* v. *Boyd,* 6 Gill. & J. 25, 32. The will in that case consisted of a letter written by the testator to his brother, the legatee, as follows: "Ten thousand dollars, of which you are already in possession of the greatest part, is to be at your disposition and for your use, free of interest, during your natural life, but, after your death, to be invested in bank stock, in the name of, and for the account jointly and severally of, the children of Jeremiah L. Boyd." Here, again, the indication of the intention was rather strong than slight. The life tenant was already in possession of the greatest part; it was declared to be at his disposition, and for his use, free of interest. There was nothing to justify the rejection of the words "free of interest," and, unless the fund was intended to remain in the possession of the legatee, they would be meaningless. That this was the view taken by the court appears in the following extract from the opinion: "The language of the will is peculiarly strong and emphatical; he was to have the use and disposition of the property free of interest during his life, and in the exercise of this right of limited ownership over it, secured to him by the will, we do not think he ought to be disturbed or controlled, unless the interests of those who were the secondary objects of the testator's bounty manifestly required it." The later cases, before cited, show the adoption of the later English doctrine, that the possession shall be retained by the executor in trust, rather than committed to the tenant for life, with leave to the remainder-men to enforce security from him upon good cause shown therefor; and, as is the case in Massachusetts, they seem to require the enforcement of that rule in the absence of a certain intention of the testator to the contrary. Viewed in the light of what we must regard as the established doctrine, the body of this legacy must be retained

by the executor, unless the language of the will shows with reasonable certainty that the testator intended it should be delivered into the possession of the tenant for life. Examining with care, not only the language of the particular clause, but that of the entire will also, we are unable to ascertain the existence of such a certain intention. We attach no importance to the fact that the testator mentions the share of his son Arthur in the recital, that, "for reasons adequate and satisfactory," he had separated the same from the shares of the rest of his children. The word "share" is used as description, and, looking at the amount of the inventory, as set out in the record, it will appear that the rest of the children will receive about $26,000 each, after the discharge of all legacies and charges. The separation of this share from the others consists in the limitations imposed upon it. It is argued, however, as the testator required the fund to be given over to the American Security & Trust Company, as trustee for the legatee's wife, in the event that she shall survive him, that it must follow that he intended the life tenant to have the possession during his life. This seems to us to be conjectural only. It may be conjectured, with fully as much reason, also, that the testator was informed in respect of the rule of law governing such bequests, and that he had implicit confidence in his executor, to whom he had intrusted the management of a large personal estate without requiring security therefor, and that he was aware of the relations between him and the legatee, and was therefore satisfied with the disposition of the possession for the latter's life which the law provided. Without knowing the conditions operating upon the mind of the testator, we can only further conjecture why he should have named another and independent trustee for the wife in case of her possible survival.

We also fail to find anything in the fourth clause which sheds any satisfactory light upon the intention of the testator as to the possession of the legacy given in the eighth. It simply directs the executor, in the event of the survival of the testator's wife, to invest the sum of $10,000, and pay the interest thereon to her during her life; and this fund, after her death, he is di-

rected to restore to his estate for distribution, as provided in said will. That he should, in this instance, have directed investment specially by the executor does not, of itself, imply an intention to have the legacy in the eighth clause turned over to the first legatee therein named.

Not without some doubt, it must be confessed, we are constrained to hold that the proper construction of the will does not require the executor to pay over the fund to Arthur Morson Payne, but that it is his duty thereunder to retain the same during the life of the legatee's wife, investing it and paying over to him its income merely. In the event of his surviving her, then the whole becomes payable to him at once. If she survive him, then it is to be paid over to the trustee specially named during her life. The doubt that has been expressed is no more that that which so often arises in endeavoring to ascertain the intention of a testator where, not being express, it must be deduced from the language of his will, and nothing else.

The conclusion which we have reached will, at least, work no special injury to the tenant for life, while removing the possibility of injury to the interests in remainder.

The decree will be reversed with costs to be paid by the executor out of the assets of the estate in his hands, and the cause remanded with direction to enter a decree in conformity with this opinion. *Reversed.*