425 A.2d 340

In re ESTATE OF John M. CUMMINGS, Deceased.

Appeal of John P. CUMMINGS, Margaret Ann Lyons, Catherine P. Strehl, Janet C. Kiefer, Jean Carol Timon and Mary Elizabeth Kelser.

Supreme Court of Pennsylvania.

Argued Oct. 1, 1980.

Decided Jan. 30, 1981.

12

Charles M. Thorp, III, Thorp, Reed & Armstrong, Pittsburgh, for appellants.

Zeno Fritz, Pittsburgh, for Elizabeth S. Cummings, Surviving Spouse.

John H. Auld, II, Pittsburgh, for Pittsburgh National Bank.

14

Before O'BRIEN, C. J., ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

OPINION

NIX, Justice.

This is an appeal of the residuary legatees under the will of John M. Cummings questioning the dismissal of their petition to vacate the surviving spouse's election to take against the will of decedent. The basic question to be answered is whether the appellee, Elizabeth Cummings, the widow, was barred from electing to take against the will under the terms of an antenuptial agreement which she and the decedent had entered. There is no disagreement that appellee and the decedent entered into the antenuptial agreement and that the agreement was a valid one and, therefore, binding upon them. The specific question is whether the decedent fulfilled a certain covenant of that agreement which required, *inter alia*, the decedent, under his last will and testament, to provide a trust fund in the amount of not less than $30,000.00 for the benefit of appellee whereby she would receive the income therefrom for the remainder of her life.

On November 16, 1964, the decedent, John M. Cummings, and Elizabeth Shields entered into an antenuptial agreement. Paragraphs five (5) and six (6) of that agreement provided as follows:

5. The party of the first part covenants and agrees that he will, by Last Will and Testament, provide a trust fund in the amount of not less than $30,000.00 with a provision that the income therefrom will be paid to the party of the second part for and during the term of her natural life and, likewise, will provide that she have possession and occupancy of a four-room cottage on leased premises at Harmarville, Pennsylvania for and during the term of her natural life, and will provide that said trust fund pay burial expenses of party of the second part.

6. In return for the party of the first part providing for the party of the second part as set forth in the preceeding [sic] paragraph, the said party of the second part waives and relinquishes all claims to dower, homestead, widow's allowance, family allowance, or any other right in and to the property, real, or personal, which the said party of the first part now owns or may hereafter acquire and further covenants and agrees to sign and execute an election to take under the Will of the said party of the first part if required in the event the said party of the first part predeceases the party of the second part.

In his will, which was dated November 4, 1975, testator provided for his wife, appellee, in the following manner:

FOURTH: I give and bequeath unto my wife, ELIZA-BETH CUMMINGS, all my furniture contained in a four (4) room cottage on leased premises at Harmarville, Pennsylvania, to be hers, her heirs and assigns forever.

FIFTH: I give and bequeath all my stock in Duquesne Light Company to my wife, ELIZABETH CUMMINGS, for and during the term of her natural life and upon her death the stock to be divided in accordance with my residuary clause hereinafter contained. However, prior to distribution, this fund will provide sufficient cash to pay reasonable burial expenses of my wife, ELIZABETH CUMMINGS, if needed to bury her.

Decedent died on August 3, 1978, almost 14 years after the execution of the antenuptial agreement and approximately three years after the execution of his will. At the time of death, decedent possessed three hundred shares of Duquesne Light Company 8.64% preferred stock, having a date of death value of $29,440.00. The court below found that the life estate created in favor of appellee under decedent's will did not satisfy the obligation undertaken in the antenuptial agreement and, therefore, appellee could elect to take against the will. Exceptions were filed and heard by the court en banc and dismissed, and the decree affirmed.

■ An analysis of the problem presented must begin with a recognition that "[a]ntenuptial agreements are instruments designed and executed for a particular purpose—to alter or extinguish a spouse's statutory rights of inheritance." *Harrison Estate*, 456 Pa. 356, 359, 319 A.2d 5, 7 (1974). Before enforcement will be given to a release of these rights, the bargain on which the release is based must be performed.

The law of Pennsylvania has always conferred upon a surviving spouse specific and substantial rights in the estate of a decedent, the unchallenged policy of the Commonwealth has been to scrupulously protect these rights. *Harrison Estate, supra*, 456 Pa. at 360, 319 A.2d at 7.

■ Because of the public policy supporting the interest of the surviving spouse in the estate of a deceased husband or wife, we have held that a relinquishment of these rights would only be enforced where it is shown that there was full and fair performance of the promise or promises given in return for that relinquishment. *See, Harrison Estate, supra.* An antenuptial agreement is, in essence, a contract, even though the public has a strong interest in its essential fairness. Thus, where there has been full and fair disclosure and the agreement is fundamentally fair, its terms will not be avoided by an inconsequential deviation that does not affect the rights of the respective parties or alter the agreement by which they intended to be bound.[1]

1. The appellee fastens upon the phrase "full and exact performance" used on one occasion in the opinion *Harrison Estate, supra* at 363, 319 A.2d 5. It is clear, however, the use of the term "exact" was not intended to suggest a requirement higher than the full and fair performance standard. Throughout the *Harrison* opinion, we maintained the full and fair performance standard and we reaffirm that standard today. If the literal meaning of the phrase "full and exact performance" had been intended in *Harrison Estate*, the fact that the terms of the bargained-for promise were not carried out by will, as agreed, would have been controlling. That opinion was not based upon the decedent's failure to make the promised provision in his will, but rather, that the executor's offer to provide the "minimum benefits" promised deprived the surviving spouse of the "reasonable expectation" that their relationship may have inspired the decedent to have been more generous when the will was executed. *Harrison Estate, supra*, 456 Pa. at 364, n. 10, 319 A.2d at 9, n. 10.

Here there was an attempt by decedent to comply with the antenuptial agreement. He did as promised make provisions for her in his will. The question is whether that provision, insofar as it varied from the precise terms of the agreement, disturbed the essential fairness of the agreement that had been reached or changed the bargain to an extent that it can be said that to enforce the agreement would be tantamount to requiring the surviving spouse to be bound by an agreement to which she did not agree. If the variation here is no more than a change in the means by which the promises provided for in the antenuptial agreement were to be effectuated, instant appellants' complaint would have substance. *Cf., In re Passmore*, 490 Pa. 391, 416 A.2d 991 (1980); *Cahen Estate*, 483 Pa. 157, 394 A.2d 958 (1978); *Shehadi v. Northwestern National Bank of Pennsylvania*, 474 Pa. 232, 378 A.2d 304 (1977).

Under the terms of the antenuptial agreement, the decedent was required to provide under his will: (a) a fund to pay his spouse's burial expenses; (b) possession and occupancy of a four-room cottage on leased premises for the life of the spouse; (c) and, a trust fund of not less than $30,000.00, the net income from which was to be paid to the spouse for her lifetime. The court below and appellee here concede that paragraph five (5) of the will satisfied decedent's first promise, thus that obligation need not detain us further.

█ Under the second promise, appellee was granted "possession and occupancy of a four-room cottage on leased premises ..." By inter-vivos transfer, the ownership to the cottage was given to appellee by decedent. By will, the decedent transferred ownership to appellee of all furniture in the cottage. As to whether these acts fully complied with the decedent's obligation under the antenuptial agreement, the hearing court concluded "the peculiar arrangement of leased ground upon which the cottage is situated and the lease itself tends to indicate that decedent did all that he

could do in this regard." This conclusion is not challenged, and we will accept it for purposes of this appeal.[2]

The troublesome question is whether the gift of the life estate fulfills the remaining promise upon which appellee's release was contingent. The antenuptial agreement provided that a trust fund "in the amount of not less than $30,000.00" would be created to provide appellee with the income therefrom for the balance of her life.

In contending that the decedent fully complied with all covenants of the antenuptial agreement, appellants assume the variance between the value of the principal of the life estate at the time of decedent's demise and the minimum $30,000.00 figure provided for in the antenuptial agreement was *de minimis* and, therefore, of no consequence. Appellee argues that this difference constituted an impermissible substitute performance and that fact alone would relieve the surviving spouse of her obligations under the antenuptial agreement.

█ Appellee is correct in the assumption that a material part of the agreement was the value of the fund should not be less than $30,000.00 computed as of the date of decedent's death. However, the court below accepted the decedent's good faith intention of establishing a fund of $30,000.00 to provide income for his spouse. This finding was not challenged. The fact that the vicissitudes of the market reduced the value of the stock between the execution of the will in response to the agreement and the date of death does not force the conclusion that the agreement was breached. We do not accept, however, appellants' position that this deficiency was *de minimis* and should be ignored. The $30,-000.00 figure was the minimum sum required to meet this

2. Appellee, in her brief, argues the fact that the transfer of the cottage was an inter vivos one rather than by will should be deemed significant. We find this contention to be totally without merit, since the interest received would have been exactly the same, if it had been conferred under the terms of the will. In this instance appellee enjoyed the ownership of the cottage prior to the death of the decedent. What is of importance is that there has been no assertion that there was an unfulfilled expectation with regard to the lease.

part of the agreement. It cannot be said that any amount less than the $30,000.00 figure is *de minimis.* We hold that the estate is required to supplement the fund and carry out the intention of the decedent to satisfy this aspect of the agreement.

This situation is distinguishable from *Harrison Estate, supra,* where the failure of the decedent to act deprived the complaining party of a reasonable expectation. Here decedent made the decision that the fund would be limited to the minimum amount of $30,000.00 It is therefore incumbent upon the executors to implement that intention by supplementing the fund to meet the terms of the agreement.

■ The lower court concluded that the failure to create the promised trust was fatal because the gift under the will did not provide the degree of flexibility of management of the assets for the widow as would have been conferred under a trust arrangement. Appellants, on the contrary, argue that there was full compliance by the decedent with the covenant of the antenuptial agreement, for under the provisions of the will, a trust was created as a matter of law. We find that although an express trust arrangement was not established, the legal consequences arising from the bequest afforded the widow the benefits of the promise for which she bargained.

Appellants' position was based upon an analysis of section 6113 of the Probate, Estate and Fiduciaries Code, 20 Pa.C. S.A. § 6113, and our interpretation in *Gramm Estate,* 420 Pa. 510, 218 A.2d 342 (1966) of the verbatim predecessor of section 6113, Estate Act of 1947, Act of April 24, 1947, P.L. 100, § 13, 20 P.S. § 301.13.[3] The lower court found section 6113 to be inapplicable.

**3.** In *Gramm Estate,* this Court found the impact of section 6113 to be:

   (1) since January 1, 1948—the effective date of this statute—legal future estates cannot be created in personalty and all such estates are now treated as trusts with the life tenant, or another person appointed in his stead by the court, acting in the capacity of trustee; (2) the life tenant is now subjected to all the rights and duties of a trustee, except as provided otherwise by the statute; (3)

Appellants reasoned that the language of section 6113 and its predecessor creates a trust under which the trustee-spouse, by statutory mandate, is given the power to change the form of the investment to one authorized for Pennsylvania fiduciaries. This power, in appellants' view, would provide the flexibility to increase the fund's income potential. The lower court disagreed on the ground that the application of section 6113 is dependent upon the existence of a power of consumption in the life tenant. We reject the reasoning of the lower court since the application of the section is not dependent on the power to consume.[4] We agree with the reasoning of appellants as far as it goes. However, it fails to reach the fundamental issue raised. Appellants correctly point out that under section 6113, the widow became a trustee for the residuary future interest beneficiaries. What they neglected to consider was that this provision also made her a trustee for herself for life.

Until 1948, when the predecessor of section 6113 became effective, a life tenant was not ordinarily a trustee nor subject to trust remedies for those in remainder. *Powell's Estate*, 340 Pa. 404, 17 A.2d 391 (1941); *Welsh's Estate*, 239 Pa. 616, 86 A. 1091 (1913); *Fidelity Ins. Trust & Safe Deposit Co. v. Dietz*, 132 Pa. 36, 18 A. 1090 (1890); *Mackinson v. Mackinson*, 2 Grant 286 (1885). A thorough explication of the law in existence prior to 1948 is set forth in *Purnell Estate*, 424 Pa. 263, 266, 226 A.2d 488, 489–90 (1967), where this Court said:

> More, particularly, where a legal life estate in personalty was bequeathed with remainder to others, and with no power of consumption given to the life tenant, a life tenant could *receive absolutely and as her own, all* the property of which the testator gave [the life tenant] a life

the life tenant or his estate must account for the value of the estate coming into his possession together with any increase in value during the period of the trust.

4. In section 6113 the power to consume is only germane to the requirement of security.

estate, thereby merely creating a debtor-creditor relationship between [the life tenant] and the remainderman for the value of the property [the life tenant] actually received at the date of distribution.

[Emphasis in the original.]

Further, where life interests in personalty were created prior to January 1, 1948, not in trust and without power of consumption, the life tenant was entitled to possession of the property only upon posting a bond for the protection of the remainder. *Purnell Estate, supra; Kirkpatrick's Estate,* 284 Pa. 583, 586, 131 A. 361, 362 (1924); *Strawbridge's Estate,* 14 D. & C. 703 (1931). Finally, although there were limitations on a life tenant having a gift of a life estate in personalty, even where a trustee was not appointed by a court, "it was always held that the life tenant was entitled to the possession of the thing bequeathed, and this power carried with it the power to make his possession valuable, according to the circumstances." *Strawbridge's Estate, supra* at 704–5. Quoted in *Gramm Estate,* 420 Pa. 510, 515, 218 A.2d 342, 345 (1966).

With the enactment of the Estate Act of 1947, Act of April 24, 1947, P.L. 100, § 13, 20 P.S. § 301.13, the verbatim predecessor of section 6113 of the Probate, Estate and Fiduciaries Code, 20 Pa.C.S.A. § 6113, the legislature provided:

A person having a present interest in personal property, or in the proceeds of the conversion of real estate, which is not in trust, and which is subject to a future interest, shall be deemed to be a trustee of such property, and not a debtor to the remainderman, with the ordinary powers and duties of a trustee, except that he shall not be required to change the form of the investment to an investment authorized for Pennsylvania fiduciaries, nor shall he be entitled to compensation as trustee. Such person, unless given a power of consumption or excused from entering security by the terms of the conveyance, shall be required to enter such security for the protection

of persons entitled to the future interests as the court in its discretion shall direct. If a person having a present interest shall not enter security as directed, the court shall appoint a trustee who shall enter such security as the court shall direct, and who shall exercise all the ordinary powers and duties of a trustee, except that he shall not be required to change the form of the investment to an investment authorized for Pennsylvania fiduciaries.

The Commission's Comment to the section 13 of the 1947 Act, 20 P.S. § 301.13, explicitly states the phrase "a person having a present interest . . . which is not in trust, and which is subject to a future interest" makes it clear that the section does not include trust relationships as such. The words "and not a debtor to the remainderman" were added to emphasize the fact that the earlier debtor-creditor rule no longer applied. Further, "except that he shall not be required to change the form of the investment to an investment authorized for Pennsylvania fiduciaries" was included to make it clear that the life beneficiary may retain the original property so long as he considers it advisable. New investments are required to be in legal investments, as the life tenant is subject to "the ordinary powers and duties of a trustee."

Section 301.13 and its successor, section 6113, did not accelerate the future interest of the remainderman so that the period between the establishment of the life tenant-trusteeship and the enjoyment of the remainderman is filled with a trust in favor of the life tenant. *See, Purnell Estate*, 424 Pa. 263, 266 n. 2, 226 A.2d 488, 489 (1967) (for all practical purposes [section 301.13] made the life tenant a trustee for herself and for the remainderman).

Pennsylvania has reached this result via statutory enactment while in other jurisdictions the same principle has been adopted through case law. In those jurisdictions the law is that where the subject of a life estate and remainder is money or its equivalent, or is such property that is converted

into money, the courts except where intent to the contrary is manifested are at liberty to direct that the life tenant shall have possession of the money or property, although in their discretion they may require security for the benefit of the remainderman. *Payne v. Robinson,* 26 App.D.C. 283 (1905); *Johnson v. Goss,* 128 Mass. 433 (1880); *Langley v. Farmington,* 66 N.H. 431, 27 A. 224 (1891); 51 Am.Jur.2d, *Life Tenants and Remaindermen,* § 35. The life tenant-beneficiary, although entitled only to the use of the income during life, is nevertheless empowered, *under proper restrictions,* to invest or reinvest the money or its equivalent in order that the fund be made remunerative. *Payne v. Robinson, supra; Scott v. Scott,* 137 Iowa 239, 14 N.W. 881 (1908); *Quigley v. Quigley,* 370 Ill. 151, 18 N.E.2d 186 (1938).

In the instant case, under the terms of the antenuptial agreement appellee was promised "a trust fund in the amount of not less than $30,000" with the income therefrom to be paid to her during the term of her natural life. The bequest of the Duquesne Light Company stock "for and during the term of her natural life" is transformed by operation of section 6113 into a trust of which she is at the same time the trustee for herself and the future interest remainderman.

We therefore conclude that the decedent's failure to set up an express trust only affected the method of performance but did not either negate the essential fairness of the agreement reached nor alter the promise for which she bargained. We therefore hold that appellee was bound by her release under the antenuptial agreement and may not be permitted to elect to take against the will.

Decree vacated, cause remanded with directions to vacate the election to take against the will and further proceedings consistent with this opinion. Each party to pay own cost.

LARSEN, J., concurred in the result.