624 A.2d 1073

**In re ESTATE OF Werner L. HESS, Deceased.**

**Appeal of Phyllis B. HESS.**

Superior Court of Pennsylvania.

Submitted Jan. 5, 1993.

Filed April 28, 1993.

R. Stephen Shibla, Harrisburg, for appellant.

David E. Lehman, Harrisburg, for appellee.

Before WIEAND, OLSZEWSKI and HESTER, JJ.

WIEAND, Judge.

Werner L. Hess was killed in an automobile accident on November 9, 1989. He died testate, and letters testamentary were duly issued to Commonwealth National Bank. Phyllis Braverman Hess, the decedent's widow, filed an election to take against her deceased husband's will. This was followed by a petition filed by the executor of the decedent's estate and the beneficiaries under his will to vacate the widow's election because of a post-nuptial agreement. The widow answered that the post-nuptial agreement was unenforceable because there had been a failure of consideration. After discovery had been completed, both parties moved for summary judgment. The trial court denied the widow's petition, granted the petition filed by the executor and beneficiaries, and held that the widow's right to take against the will was barred by the terms of the post-nuptial agreement. The widow has appealed.

Werner Hess and his wife, Phyllis, were married on November 9, 1974. Both had been married before and had had children by their prior marriages. In order to preserve their separate estates for their children, the parties entered a post-nuptial agreement, by the terms of which Mrs. Hess relinquished her statutory right of inheritance, including the right to take against her husband's will. Werner, in addition to waiving statutory rights in his wife's estate, agreed to make various payments to or on behalf of his wife and, further, to purchase and maintain a life insurance policy, with a minimum death benefit of fifty thousand ($50,000.00) dollars, in which

his wife was named beneficiary. Phyllis signed the agreement contrary to the advice of her counsel.

Pursuant thereto, Werner purchased from Fidelity Life Insurance Company a policy of life insurance in the face amount of fifty thousand ($50,000.00) dollars and named his wife as beneficiary. This policy remained in effect until on or about March 21, 1988.[1] On that date, Werner replaced the Fidelity policy with a new one which he purchased from New England Mutual Life Insurance Company. This came about at the urging of F.M. Richard Simons, an insurance agent, who represented that he could obtain for Werner the same amount of coverage for a lower premium. After Werner's death, New England Mutual Life denied liability and asserted that it was entitled to rescind the policy because the state of Werner's physical and mental health had been misrepresented in the application.

The widow did not pursue a claim against New England Mutual Life. Instead, she elected to take against her deceased husband's will. The executor and beneficiaries have resisted this claim. They have urged her to bring an action contesting New England's attempt to rescind the policy and have offered to pay to her the amount of fifty thousand ($50,000.00) dollars which she would have received if the policy had been paid.

A motion for summary judgment may be granted if there is no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035(b). See: *Pocono International Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 468 A.2d 468 (1983); *Williams v. Pilgrim Life Insurance Co.*, 306 Pa.Super. 170, 452 A.2d 269 (1982).

In *Harrison Estate*, 456 Pa. 356, 319 A.2d 5 (1974), the Supreme Court held that when a party to an antenuptial agreement fails to perform the promises agreed upon, there is a failure of consideration, and the surviving spouse need not accept a substituted performance by the executor but may

1. There is some evidence that the face amount of the policy had been reduced by sums borrowed by Werner from the insurer.

assert her claims against the decedent's estate. The Court reasoned:

An antenuptial agreement is more than an ordinary contract. As we noted in *Hillegass Estate*, 431 Pa. 144, 149, 244 A.2d 672, 675 (1968):

. . . .

Antenuptial agreements are instruments designed and executed for a particular purpose—to alter or extinguish a spouse's statutory rights of inheritance. It is true that by a valid antenuptial agreement either party may waive his or her right to the family exemption. Nevertheless, our courts will carefully examine the agreement to make certain that it reflects "the highest degree of good faith." See *Hillegass Estate, supra; Gelb Estate*, 425 Pa. 117, 228 A.2d 367 (1967). Before the release of such significant rights may be enforced, the bargain on which the release is based must be performed. Here, in the absence of the bargained-for performance—execution of a new will—the surviving spouse retains her [statutory rights].

*Id.* 456 Pa. at 359, 319 A.2d at 6–7. See also: *Levine's Estate*, 383 Pa. 354, 118 A.2d 741 (1955). Compare: *In re Estate of Cummings*, 493 Pa. 11, 425 A.2d 340 (1981).

The defense of "failure of consideration" has been defined at 8 P.L.E. Contracts § 66 as follows:

When the consideration for a promise wholly fails, the promise is held not judicially enforceable. As stated by Professor Corbin, a failure of the consideration does not mean lack of consideration; nor does it often mean that the promise, now unenforceable, was never a valid contract. It does mean, on the other hand, that a performance for which the promisor bargained has not been rendered; in many cases, though not in all, that failure is a good legal excuse for his refusal to perform his own promise. . . .

In the instant case, if the deceased husband had simply failed to purchase the agreed insurance, everyone would agree that there was a failure of consideration which entitled the appellant-wife to disregard her agreement and take against

her deceased husband's will. In that event, the appellant-wife could not be required to accept a substituted payment of fifty thousand ($50,000.00) dollars by the executor. Similarly, if the husband had obtained a policy of insurance which was avoided by the insurer because of fraudulent misrepresentations made by the insured, almost everyone would agree that there had been a failure of consideration entitling the wife to avoid her agreement to make no claim against her husband's estate.

In fact, however, it is not now clear whether the policy purchased by the deceased husband from New England Mutual Life is subject to avoidance, under the circumstances of this case, for alleged false information contained in the application. If the policy is not subject to avoidance by the insurer, then the wife-appellant will be unable to meet her burden of showing a failure of consideration for her agreement to waive her statutory rights in and to her deceased husband's estate. On the other hand, if the insurance company is correct in its claim that it was defrauded and that, therefore, it can avoid the policy, then it would appear that there was a failure of consideration for the wife-appellant's promise. In that event, she cannot be required to accept substituted performance by the executor of her deceased husband's estate.

Because this issue cannot be determined finally on the present state of the record, it is apparent that a genuine issue of fact remains. Therefore, the entry of summary judgment was premature and inappropriate. If the validity of New England Mutual Life's policy is not litigated in a separate action, it may be necessary that it be litigated within the present proceedings. In that event, the burden of proving a failure of consideration will be on the appellant widow. *In re Estate of Kester*, 486 Pa. 349, 353, 405 A.2d 1244, 1246 (1979). Until the validity of the policy is determined, however, it cannot be said, as a matter of law, that there has been or has not been a failure of consideration.

Reversed and remanded for further proceedings. Jurisdiction is not retained.