PARKER, Judge.
Ann Galego Gridley, Marie Galego, David Galego, Franklin T. Galego, and Benjamin Galego (the grandchildren), the beneficiaries of Frank C. Galego (the decedent), appeal the trial court’s final order finding that the decedent breached an antenuptial property agreement (the antenuptial agreement) which required that the decedent provide in his will a trust fund for the reasonable care, comfort, maintenance, and support of Sadie M. Galego (the wife).
In November 1989, the wife and the decedent entered into the antenuptial agreement. Among other things, the decedent agreed to maintain and support the wife as long as he was physically and financially able, and both the wife and the decedent waived any claims against the estate of the other. Section Sixteen of the antenuptial agreement provides:
Prospective husband will provide in his will that, in the event of his prior death during the marriage, a trust fund in the amount of $100,000.00 or more shall be set up by him therein for the benefit of prospective wife during her lifetime, for her reasonable care, comfort, maintenance and support.
Thereafter, the wife and the decedent married. It is undisputed that the decedent provided for all of the wife’s needs during the marriage. He generally paid all of the bills required by the antenuptial agreement until his hospitalization and, thereafter, the decedent’s attorney, Paul Galego, paid the bills.
In his will, which was dated February 16, 1994, the decedent attempted to comply with the antenuptial agreement by providing for the wife as follows:
SIXTH: I give and bequeath an annuity, in the amount of ONE HUNDRED FIFTY THOUSAND DOLLARS ($150,000.00), payable in monthly installments of ONE THOUSAND DOLLARS ($1,000.00), to my wife, SADIE M. GALEGO; or should Sadie predecease me, or die before the annuity is paid in full, then to be divided equally, per capita, among the following children of my son, PAUL:
(A) MARIE B. SCHALLER,
(B) DAVID P. GALEGO, a/k/a Max McQuillen,
(C) ANN E. GRIDLEY,
(D) FRANKLIN T. GALEGO, and
(E) BENJAMIN GALEGO.
The decedent died on October 1, 1994, approximately five years after the execution of the agreement and almost eight months after the execution of his will. After the personal representative objected to the wife’s claims on the estate, the wife sued the estate in a two-count amended complaint. The first count was for breach of contract, wherein the wife alleged that the decedent materially breached the antenuptial agreement by failing to provide in his will a trust which complied with the terms of the antenuptial agreement; therefore, the antenuptial agreement should be rescinded and the wife allowed to take her elective share (30%) of the estate. The second count was for specific performance, wherein the wife demanded a judgment requiring the personal representative to perform the antenuptial agreement by paying the wife $100,000 outright and free of trust, because the trust provisions in the antenuptial agreement were vague. The grandchildren and other beneficiaries taking under the will sought to have the annuity provision in the will honored with the remainder of the annuity equally distributed to them upon the wife’s death. The trial court held that the antenuptial agreement was a valid, binding, and enforceable contract between the parties.
In order to give meaning to certain portions of the antenuptial agreement and the will, the court read the documents in their entirety and then looked at the antenuptial agreement in conjunction with the will. The trial court determined that the decedent *275 breached the antenuptial agreement by providing for an annuity in his mil instead of a trust fund. The provision in the will did not comply with the provision of the antenuptial agreement in that the decedent bequeathed an annuity to the wife for $150,000 payable in monthly installments of $1000.
The trial court entered an amended judgment finding that the decedent breached the antenuptial agreement; however, the court found that the remedy of recision was inappropriate. The trial court ruled that specific performance was an appropriate and adequate remedy and directed the copersonal representatives to create a $150,000 trust, with a corporate or other fiduciary acceptable to the wife as trustee, with the remainder interest passing to those specified in the wife’s will, or for the remainder interest to pass to her heirs by intestate succession. The trial court further ruled that this new trust was to be in lieu of the annuity set forth in paragraph six of the decedent’s will and that the provision which left any remainder interest in the annuity to the grandchildren would be deemed satisfied.
This case raises two issues. The first issue is whether the decedent’s failure to provide for an express trust as required by the agreement affected the rights of the wife or altered the antenuptial agreement by which they both intended to be bound. In Florida, an antenuptial agreement is a valid contract and is enforceable against the estate. If a decedent breaches a contract to make a will, the right being enforced is a contract right. See Lindeburg v. Lindeburg, 162 So.2d 1, 3 (Fla. 3d DCA), cert. denied, 166 So.2d 754 (Fla.1964) (A husband can be required to answer personally through his estate for his breach of contract of a property settlement agreement).
Neither this court nor the attorneys representing the parties have found a Florida case addressing this particular factual situation. However, the Supreme Court of Pennsylvania did make an analysis of this issue in In re Cummings’ Estate, 493 Pa. 11, 425 A.2d 340 (Pa.1981). In Cummings, the parties signed an antenuptial agreement wherein the wife relinquished her statutory rights of inheritance in return for the promise of the husband to provide for a trust fund in his will in an amount not less than $30,000, with the income therefrom to be paid to her during the term of her natural life. The husband actually bequeathed her stock which had a value of $29,440 that was to be used to give her support for the remainder of her life. Id. The trial court found that the husband breached the contract because the provision did not comply with the antenuptial agreement; therefore, the trial court allowed the wife to take her elective share. The Pennsylvania Supreme Court reversed stating that although the husband failed to perform in the exact manner anticipated, it did not require that the court find that a breach had occurred so as to relieve the wife of her obligations. 425 A.2d at 345. Instead, the court held that the estate was required to take the fund, supplement it, and turn it into a trust for the wife, thereby carrying out the intention of the husband to satisfy the provision of the antenuptial agreement. Id.
We conclude that Cummings is the correct approach to take in this case and find that the decedent’s noncompliance with the antenuptial agreement only affected the method of performance, but that it did not negate the antenuptial agreement. The wife bargained for a life estate in a trust fund of $100,000 or more should the decedent predecease her. This trust was to provide her with total support during her life. Accordingly, the trial court fashioned the appropriate remedy by requiring the eopersonal representatives to establish a trust fimd in the amount of $150,000. We affirm that portion of the trial court’s order establishing a trust for the wife, not because the decedent breached the contract, but because the decedent’s failure to provide in his will a trust which complied exactly with the terms of the agreement only affected the method of performance and did not alter the promise for which the wife bargained.
The second issue is whether the decedent’s will controls the testamentary disposition of the remainder interest in the trust. Section 732.6005(1), Florida Statutes (1993), provides that “the intention of the testator as expressed in his will controls the legal effect of his dispositions.” In Filkins v. Gurney, 108 *276 So.2d 57, 58 (Fla. 2d DCA 1959), this court stated:
It is rudimentary in construing a will that the intention of the testator is the guiding and determining factor and that a will cannot be construed by conjecture or surmise as to such intention. Nor can a court reconstruct or alter a will according to a notion of what the testator should have done but must be governed by its interpretation of testatorial intent as gathered from the language of the total testament.
See also Nesbitt v. Eisenberg, 139 So.2d 724 (Fla. 3d DCA 1962). Additionally, the First District, in Rogers v. Rogers, 152 So.2d 183 (Fla. 1st DCA), cert. denied, 155 So.2d 695 (Fla.1963), and Bauer v. Reese, 161 So.2d 678 (Fla. 1st DCA 1964), concluded that in the absence of clear legislative intent, courts will not create or destroy testamentary dispositions on the theory that the result accords with the natural desires of the deceased.
In this case, the antenuptial agreement does not give the wife the remainder interest; therefore, the husband had the right to bequeath the remainder as he desired. The decedent provided in his will that the remainder interest, if any, would pass to his grandchildren upon the death of the wife. Because the antenuptial agreement does not address the disposition of the remainder interest, we must look to the will to derive the intent of the testator. The clear language of the will establishes that the decedent intended the wife to have a life estate in the funds and for any remaining interest to pass to the grandchildren. Accordingly, the trial court erred in determining that the remainder interest should be disposed of through the wife’s estate or through intestate succession to her heirs.
We affirm that portion of the trial court’s order establishing a trust fund in the amount of $150,000 for the benefit of Sadie M. Gale-go; however, we reverse that portion of the trial court’s order directing that the unused trust funds remain in her estate, with directions that the remainder of the trust fund be distributed in accordance with the sixth provision of the decedent’s last will and testament.
DANAHY, A.C.J., and FRANK, J., concur.