J-S03019-21

2021 PA Super 50

| | | |
|---|---|---|
| IN RE: ESTATE OF D. RENWICK A/K/A RAYMOND D. RENWICK BRENDA L. ADAMS AND JEFFREY D. RENWICK, CO-EXECUTORS OF THE ESTATE OF RAYMOND D. RENWICK | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | No. 631 WDA 2020 |
| NANCY H. RENWICK | : : | |
| Appellant | : : | |

Appeal from the Order Entered June 1, 2020
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): No. 02-19-02842

BEFORE: DUBOW, J., MURRAY, J., and STRASSBURGER, J.[*]

OPINION BY MURRAY, J.: **FILED: MARCH 22, 2021**

Nancy H. Renwick (Appellant) appeals from the order granting the petition to vacate her elective share, filed by Brenda L. Adams and Jeffrey D. Renwick, co-executors of the Estate of Raymond D. Renwick (the Estate). After careful review, we reverse and remand.

Appellant and Raymond D. Renwick (Decedent) married on November 24, 2000. N.T., 2/11/20, at 11-12. This was the second marriage for both Appellant and Decedent. On the day of the wedding, they executed an

_____

[*] Retired Senior Judge assigned to the Superior Court.

antenuptial agreement (Agreement). Orphans' Court Opinion, 6/1/20 at 2.[1] Nearly two decades later, on February 26, 2019, the Decedent executed a will excluding Appellant. *Id.* He died two months later, on April 23, 2019. *Id.* at 1.

The will was admitted to probate on April 29, 2019. On June 17, 2019, Appellant filed an election of surviving spouse. The Estate filed a petition to vacate the spousal election on July 24, 2019. The Orphans' Court convened a hearing on February 11, 2020. At issue was whether: (1) the Agreement was void *ab initio* because Appellant was never shown a final version of it; (2) the Agreement was void for lack of consideration; and (3) if valid, did the Agreement only foreclose Appellant from taking the spousal election on "Separate Property," as defined in the Agreement. N.T., 2/11/20, at 4-6.

On June 1, 2020, the Orphans' Court issued an opinion and order finding in favor of the Estate, and vacating Appellant's spousal election. While the court explained, in detail, that the Agreement was not void *ab initio* because it did not find Appellant to be a credible witness, its discussion of the two remaining issues concerning lack of consideration and the spousal election on marital property was brief. Orphans' Ct. Op. at 2-4.

_____

[1] The pages in the Orphans' Court opinion are unnumbered; for ease of discussion, we reference each page by number.

Appellant filed this timely appeal on June 22, 2020. Both Appellant and the Orphans' Court have complied with Pennsylvania Rule of Appellate Procedure 1925. Appellant presents five issues for our review:

1. Whether the lower court erred in vacating [Appellant's] statutory spousal election when it failed to follow this Court's ruling that the failure of consideration in a purported antenuptial agreement entitles the surviving spouse to disregard the agreement and take against the deceased husband's will[?]

2. Whether the lower court erred in vacating [Appellant's] statutory Spousal Election when it failed to follow this Court's ruling that a surviving spouse need not accept attempted substitute performance of a purported antenuptial agreement (even if, *arguendo*, it was made), but may instead assert her claims against the deceased husband's will[?]

3. Whether the lower court erred in ignoring the undisputed testimony of [Appellant's] expert, who established that the alleged "substitute" consideration did not come from the decedent or the Estate, but from funds contributed by [Appellant] herself[?]

4. Whether the lower court erred in vacating [Appellant's] statutory spousal election in its entirety when the purported antenuptial agreement only applied to "separate property" as uniquely defined in the agreement, and not to property transferred during marriage or the proceeds of future business interests started in conjunction with [Appellant?]

5. Whether the lower court erred in failing to consider the undisputed evidence presented that there were several drafts of the purported antenuptial agreement prepared, and that the "attorney's certification" signed by counsel (who was not present at the alleged signing of the agreement on [Appellant's] wedding day) was faxed before the purported agreement was finalized, and separate from any version of the agreement[?]

Appellant's Brief at 2-3.

At the outset, we recognize that "premarital and post-nuptial agreements are contracts and are governed by contract law." ***Stackhouse v. Zaretsky***, 900 A.2d 383, 386 (Pa. Super. 2006). Our standard of review of a court's order upholding an antenuptial agreement is subject to an abuse of discretion or error of law. ***Id.*** "An abuse of discretion is not lightly found, as it requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures." ***Id.*** A reviewing court "will not usurp the trial court's fact finding function." ***Id.***

Further, an antenuptial agreement is presumed valid if it provides that the future spouses have fully disclosed to one another the extent of their assets and the extent of possible marital rights in the absence of the agreement. ***Cooper v. Oakes***, 629 A.2d 944, 948 (Pa. Super. 1993). The party seeking to set aside an antenuptial agreement must satisfy the evidentiary standard of clear and convincing evidence. 23 Pa.C.S.A. § 3106.

In her first and second issues, Appellant challenges the Orphans' Court's determination that the Agreement was not void for lack of consideration, and the Estate was allowed to substitute consideration. Appellant's Brief at 8-14. After careful consideration, we conclude the trial court disregarded longstanding precedent in finding the Agreement was not void for lack of consideration, and that the Estate could substitute consideration. Thus, we are constrained to reverse.

At issue is Article III(A) of the Agreement, "Retirement Account for [Appellant]." It reads:

> [The Decedent] agrees that for so long as he owns an interest in any business, whether alone or jointly with others, he shall, prior to April 15th of each year following a full calendar year in which he and [Appellant] are married and are not separated or divorced, contribute the maximum amount permitted under Section 408 of the Internal Revenue Code of 1986, as amended by any corresponding provisions of any subsequent federal tax law, into an individual retirement account titled in [Appellant's] name.

Agreement at 7.

The parties do not dispute that the Decedent failed to provide the consideration of annual contributions to an individual retirement account (IRA) for Appellant. Appellant's Brief at 8; Estate's Brief at 6. Appellant argues that this failure renders the Agreement void for lack of consideration pursuant to the Pennsylvania Supreme Court's decision in *Estate of Harrison*, 319 A.2d 5 (Pa. 1974). Appellant's Brief at 8-14. We agree.

The Orphans' Court addressed this issue, in entirety, as follows:

> . . . with regard to the claim that there was lack of consideration because the Decedent did not fund the IRA for [Appellant], as set forth in Article III(A), the [Orphans' C]ourt finds that argument to be without merit. Initially [Appellant] could have sought enforcement of this provision during the nineteen (19) years that she and the Decedent were married, but she did not do so. That being said, this issue can be easily remedied via a claim against the estate for the full value, including reasonable interest, of the IRA had it been funded as promised.

Orphans' Ct. Op. at 3-4.

The Orphans' Court did not cite any authority to support its determination that Appellant's failure to enforce the Agreement during

marriage foreclosed enforcement after Decedent's death. Significantly — and conversely — our courts have allowed spouses to challenge agreements lacking consideration during probate. ***See***, ***e.g., Harrison***, ***supra***. For this reason, we are constrained to find that the Orphans' Court misapplied the law and abused its discretion. ***Stackhouse***, 900 A.2d at 386.

In ***Harrison***, the antenuptial agreement required the husband/decedent, upon death, to have as part of his will, a trust for the benefit of the wife/widow, funded with at least $150,000. The net income from the trust was to be distributed to the widow until her death or remarriage. ***Id.*** at 5. The decedent never executed a will with this provision. ***Id.*** at 6. The widow petitioned for a family exemption, which the Orphans' Court denied on the basis that the substitute consideration offered by the estate, namely setting up a trust funded by the minimum dollar amount, would suffice because the decedent's failure to establish the trust was "only a technical requirement." ***Id.*** (citation omitted). The Supreme Court reversed. ***Id.*** It emphasized the significance of a spouse's statutory right of inheritance, and decreed that agreements which alter such rights cannot be enforced "in the absence of the bargained-for-performance. . ." ***Id.*** at 7. The Supreme Court also rejected the substitute performance offered by the estate, opining that although "the antenuptial agreement speaks in amounts which appear to be reasonable, these amounts are only the minimum which decedent might have provided had he executed a new will." ***Id.*** at 9. Accordingly, the Supreme

Court reversed the Orphans' Court and remanded with instructions to enter an appropriate order granting the widow the family exemption. *Id.*

Here, the Estate argues that **Harrison** is distinguishable, and asserts that this case is more analogous to **Estate of Cummings**, 425 A.2d 340 (Pa. 1981). Estate's Brief at 18-24. We disagree.

In **Cummings**, the antenuptial agreement provided that the husband/decedent would establish in his will, for the benefit of the wife/widow, a trust of not less than $30,000. **Cummings**, 425 A.2d at 341. He did not do so; instead, he willed the widow 300 shares of stock worth approximately $29,440 at the time of his death. *Id.* at 342. Our Supreme Court found this to be "an attempt" to comply with the antenuptial agreement. *Id.* The Court stated:

> The question is whether that provision, insofar as it varied from the precise terms of the agreement, disturbed the essential fairness of the agreement that had been reached, or changed the bargain to an extent that it can be said that to enforce the agreement would be tantamount to requiring the surviving spouse to be bound by an agreement to which she did not agree. If the variation here is no more than a change in the means by which the promises provided for in the antenuptial agreement were to be effectuated, instant appellants' complaint would have substance.

*Id.* at 342-43 (citations omitted). The Supreme Court concluded that the decedent promised his wife no less than $30,000 upon his death, and the change from a trust to stock shares was permissible, so long as the estate paid the difference between the $29,440 value of the stock and $30,000. *Id.* at 343-44.

Instantly, the Estate claims this case is unlike **Harrison**, in which there was no attempt at performance, and analogous to **Cummings**, where there was some attempt at performance, because here, "there was no breach of a non-monetary promise. . . only a purely monetary failure." Estate's Brief at 27. The Estate asserts that the Decedent changing the title to the marital residence in 2011, from Husband's name alone to both his and Appellant's names, was undertaken to comply with Article III(A) of the Agreement. **Id.**

This argument is flawed. First, the Agreement at Article IV(O)(8) provides that any modification must be in writing. Agreement at 17. The Estate has not produced any writing addressing this alleged modification. Second, the Agreement already contemplated two possible scenarios with respect to the marital residence: (a) it would be retitled in both spouses' names, and become marital property; or (b) it would remain in the Decedent's name, and Appellant would retain a life estate. **Id.** at 4 and 7. Thus, by being titled in both spouses' names in 2011, the residence became marital property, and not a substitute for Appellant's IRA. **See id.** at 4. Finally, the Decedent's failure to fund Appellant's IRA exemplifies the type of material change "from the precise terms of the agreement . . . [which disturbs the agreement] to an extent that it can be said that to enforce the agreement would be tantamount to requiring the surviving spouse to be bound by an agreement to which she did not agree." **Cummings**, 425 A.2d at 342-43.

Article III(A) of the Agreement provided that the Decedent would fund a retirement account for Appellant. The purpose of a retirement account is to financially provide for the retired person. The establishment of a retirement account often affords tax benefits, and always envisions financial growth.[2] On the other hand, the primary function of a residence is to provide shelter. As such, the residence would not provide retirement income for Appellant unless she rented or sold it, in which case she would require alternate housing, which would defeat purpose of using the residence for retirement income.[3] Thus, we disagree with the Estate that this case is analogous to the substitution of stock certificates for a trust in **Cummings**.

---

[2] In arguing the marital residence is an appropriate substitute for a retirement account, the Estate ignores the distinction between these assets, tallies the maximum amount, $96,000, the Decedent could have contributed to Appellant's IRA, and imputes that amount to the nonexistent IRA; the Estate emphasizes that the marital residence is worth more than $96,000. Estate's Brief at 27-29. This claim is not persuasive, given that the time period from November 2000-2019 was one of great growth in the stock and bond markets, and had the money had been invested, the account would have been worth an indeterminate amount, but likely much more than $96,000.

[3] The Estate briefly argues that in the alternative, a bank account in the names of both Appellant and the Decedent, which transferred to Appellant at Decedent's death, could be considered substitute performance. Estate's Brief at 28-29. The Estate's argument is undeveloped. Moreover, the undisputed evidence was that the bank account was funded by a combination of Appellant's social security income and marital funds. N.T., 2/11/20, at 34-35, 46, 48-50. Also, there was no written modification to suggest this account was a substitute for the IRA, and as marital property, it was subject to a different article of the Agreement. **See** Agreement at 4.

The Estate also claims that **Harrison** is "stale," and the Supreme Court's decision in **Simeone v. Simeone**, 581 A.2d 162 (Pa. 1990), tacitly overrules it. Estate's Brief at 18-29. Again, we are unpersuaded. **Simeone** concerned the enforcement of a provision in a prenuptial agreement which prohibited the wife from seeking alimony *pedente lite*. **Simeone**, 581 A.2d at 163-64. **Simeone** never mentions or discusses **Harrison**, and is silent as to whether lack of consideration renders an antenuptial agreement void. Notably, our Supreme Court decided **Simeone** in 1990, and in the past 30 years, in at least two published opinions and several memoranda, this Court has continued to rely on **Harrison**. **See, e.g., In re O'Brien**, 898 A.2d 1075, 1081-83 (Pa. Super. 2006); **Estate of Hess**, 624 A.2d 1073, 1074-75 (Pa. Super. 1993). We reject the Estate's contention that **Harrison** is no longer good law.

Here, as in **Harrison**, the Decedent failed to comply with the consideration requirement of the Agreement. Accordingly, we apply **Harrison** and find the Agreement void for lack of consideration. **Harrison**, 319 A.2d at 7-9; **see also O'Brien**, 898 at 1081-83 (affirming Orphans' Court decision that widow could take elective share of estate and finding postnuptial agreement void for lack of consideration where decedent liquidated asset which served as consideration for agreement); **Hess**, 624 A.2d at 1074-75 (holding Orphans' Court erred in granting summary judgment to estate on widow's petition to take elective share, where there was genuine question of material fact as to whether postnuptial agreement failed for lack of

- 10 -

consideration where insurance company denied payout on life insurance policy which served as consideration because decedent allegedly misrepresented his health status when applying for policy); *see also Cummings*, 425 A.2d at 342-43 (agreement unenforceable when it binds a party to something to which the party did not agree).

For the reasons stated above, the Orphans' Court erred in granting the Estate's petition to vacate Appellant's elective share. We therefore reverse the order of the Orphans' Court and remand with instructions to reinstate Appellant's petition for elective share.[4]

Order reversed. Case remanded. Jurisdiction relinquished.

Judge Dubow joins the Opinion.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/22/2021

---

[4] Because of this disposition, we need not address Appellant's remaining issues.